JOSEPH M. DELLA RATTA ET AL. *v.* BROADNECK
DEVELOPMENT CORPORATION ET AL.

[No. 425, September Term, 1979.]

*Decided January 10, 1980.*

The cause was argued before MORTON, MASON and COUCH,
JJ.

*Roy Niedermayer* for appellants.

*Timothy E. Meredith,* with whom were *Robert W. Warfield*

and *Corbin, Heller & Warfield, Chartered* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

This appeal stems from an adverse judgment rendered by the Circuit Court for Anne Arundel County against appellants, Joseph M. Della Ratta and Della Ratta, Inc., in their suit against appellees, Broadneck Development Corp., William E. Dixon, Thomas I. Baldwin, and William E. Baldwin, Jr. The action contained five counts — two counts of breach of contract, two counts of fraud, and one count of "lost builder's profit". At the trial of the case appellants abandoned count five (lost profits), the court granted appellees' motion to dismiss counts one and three (the contract counts) at the conclusion of appellants' case, and found in favor of appellees on counts two and four (the fraud counts). Appellants have appealed only from the judgment entered as to the contract counts, raising a single issue for our consideration:

> "Did the trial court err by dismissing counts one and three on the ground that enforcement of Della Ratta's contract for the formation of joint ventures to develop real property was barred by the Maryland Statute of Frauds?"

To better understand the basis for this controversy, we shall recite, from the record, the historical background of the participants and their relationship. Joseph Della Ratta was a real estate developer experienced in the financing and construction of apartment projects. Broadneck Development Corporation was the owner of some 374 acres of land in Bay Hills, Anne Arundel County. The individual appellees were the controlling stockholders of Broadneck and each was also a director and officer of this corporation. Prior to 1970 Broadneck's primary activity had been the finishing of single family house lots and subdivisions by the installation of utilities and roads; the lots were then sold to other builders. Of the total acreage owned by Broadneck, some 76 acres were

zoned to permit construction of multi-family, garden-type apartments. It is this acreage that is involved in this case.

Appellants claimed that in the spring of 1970 Thomas Baldwin approached Joseph Della Ratta to ask him to participate in the development of the Broadneck property. It seems clear that Della Ratta had shown interest in such participation previously (1968) but nothing resulted at that time. Della Ratta testified that he had made it clear at the meeting with Baldwin in 1970 that he was not interested in land development and single family lot preparation and that he was only interested in the development of the multi-family acreage. Della Ratta also testified that an oral contract was made at this initial meeting providing for his and his corporation's participation, using a 1968 memorandum agreement as the basic framework for this contract. It was claimed that by this oral agreement Della Ratta agreed to purchase ten per cent (10%) of Broadneck's outstanding stock for Twenty Five Thousand Dollars ($25,000) and to loan Broadneck an additional Twenty Five Thousand Dollars ($25,000). In return, the individual appellees, as controlling stockholders of Broadneck, agreed to have Broadneck transfer the property zoned for garden apartments to a series of separate entities. It appears that the overall development was to have been accomplished in stages since some of the lots, having sewer and water available, could be developed before other portions of the land which did not have these facilities. The record makes clear the intention of the parties to form a joint venture for the purpose of developing the land as each section became available for building. Della Ratta was to have a percentage interest in each joint venture in an amount equal to his interest in Broadneck, increased by fifteen per cent (15%) for performing the actual construction through Della Ratta, Inc., his contracting corporation.

Mr. Della Ratta did pay Twenty Five Thousand Dollars to Broadneck and received five (5) shares of stock. Later, he paid the additional Twenty Five Thousand Dollars representing the loan. Thereafter, Broadneck implemented the agreement by its corporate resolution to sell the designated property to six joint ventures set up to effectuate the agreement. In 1972

Broadneck conveyed to the Oakland Hills Joint Venture that part of the property known as "Oakland Hills", and construction began. When this particular project was substantially completed, the parties turned to the development of another section known as "Dorado Village". After preliminary work was done, including preparation of site, engineering, and architectural plans, appellees refused to proceed further and this suit followed.

The motion to dismiss was granted at the close of plaintiffs' (appellants) case in chief, and we shall review the ruling only on the basis of the evidence before the court at that time. The trial judge explained his reason for dismissing the counts in the Memorandum and Order filed at the end of the case. In it the trial judge stated:

"At the conclusion of Della Rattas' case, the Court granted the Defendants' Motion to Dismiss Counts I and III. The Court found from the evidence presented that the agreement attempted to be sued upon by the Della Rattas was oral. It specifically provided that the Della Rattas, upon completion of various constructions of the multi-family units, would receive a part ownership of the land in addition to other benefits. Thus, the Court concluded that any agreement between the parties was barred by the Statute of Frauds, § 5-104 Real Property, Maryland Code. Counsel for the Defendants urged *James v. Herbert,* 309 P2d 92, upon the Court. This California case however, although admittedly extremely close factually, provided for each of the partners to the joint venture to share profits, not realty. As has been pointed out in *Wiley v. Wiley,* 115 Md. 646, 656, an oral agreement to divide profits is not unenforceable as a violation of the Statute of Frauds. Nor does Della Rattas' part performance remove them from under the Statute of Frauds, as the doctrine is available only in Equity. *Cline v. Fountain Rock Lime and Brick Company, Inc.,* 210 Md. 78, 88."

As a preliminary to our consideration of the trial court's granting of appellees' motion to dismiss, we note that the portion of the Maryland Statute of Frauds applicable to contracts involving real property is now found in § 5-104, *Md. Real Prop. Code Ann.* (1974), and provides:

> "No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him."

To resolve the issue presented by appellants, the applicability of § 5-104 of the Real Property Code to counts one and three must be considered separately.

### Count One

Appellants' allegations in count one, in a nutshell, are based upon Broadneck's refusal to convey the remainder of the land in question to the various joint ventures and proceed with the development. While this is part and parcel of the larger agreement among the individuals, it is based upon a separate agreement between Broadneck and the joint ventures. This agreement poses the greatest difficulty since it directly involves the "sale or disposition of land". There is little doubt that this agreement falls within the operation of the Statute of Frauds. The question, then, becomes whether the Statute was satisfied, and we conclude that it was.

The Statute in this instance was satisfied by a resolution of the Broadneck Development Corporation contained in the typed minutes of a stockholders' meeting on April 29, 1971. It was thereby resolved:

> ". . . (T)hat Broadneck Development Corporation enter into contracts with six different joint ventures for the sale of the apartment land at and for a total price of $378,500.00. This sale shall be in the form of contracts of sale with a deposit of 10% and the balance to be paid over a three year period with

interest at the rate of 5% per annum to start accruing from the date of contract. The contract shall provide that any or each joint venture may prepay in whole or in part at any time but that title shall be clear at the time of the execution of the deed.

As soon as descriptions of the separate parcels can be obtained, contracts shall be executed."

The minutes containing this resolution were signed by William E. Dixon, the corporate secretary of Broadneck. Dixon admitted in his deposition, portions of which were received into evidence, that six contracts between Broadneck and the six joint ventures were executed by Broadneck and sent to Mr. Schwartz (another partner in the joint venture), who never executed the contracts and did not return them. The written contracts themselves were not produced at trial. *Restatement of Contracts* § 216 (1932), states as follows:

"The loss or destruction of a memorandum does not deprive it of its effect as a satisfaction of the Statute. . . ."

Cited with approval in *Sewell v. Sewell,* 218 Md. 63, 71, 145 A.2d 422 (1958); quoted in *R.E.C. Management v. Bakst Serv.,* 265 Md. 238, 289 A.2d 285 (1972). Thus, although the whereabouts of the six written and executed contracts between the corporation and the joint ventures is unknown, this fact does not destroy its effectiveness in satisfying the Statute. All the Statute of Frauds requires is that the contract upon which the action was brought be in writing and signed by Broadneck or its duly authorized agent. Mr. Dixon's testimony established that these requirements were met. Any deficiencies created by the loss of the contracts may be compensated by oral testimony as to their making and contents. In our view the corporate resolution, signed by the corporate secretary, and followed by six contracts which were admittedly executed by Broadneck, satisfy the requirements of the Statute of Frauds. The trial court erred in concluding that an action could not be maintained upon the agreement alleged in count one since it was barred by § 5-104 of the Real Property Article.

### Count Three

We also conclude that the trial court erred in dismissing count three, the contract count involving the individuals, Baldwin and the Dixons. Appellants admit that the agreement to form a joint venture for the purpose of purchasing and developing the property in question was oral, but contend that such an agreement does not fall within the Statute of Frauds.

It was alleged in count three that "Upon completion of development, Della Ratta was to receive a fifteen (15%) percent ownership interest in the multi-family projects constructed in return for (a) construction of the apartment projects through his general contracting corporation at cost plus a five (5%) percent fee, and (b) arranging suitable construction and permanent financing." According to Della Ratta's testimony the increased ownership interest would be in the joint venture which was to own and develop property. This is confirmed by the "First Amendment to Oakland Hills Joint Venture Agreement" which provides: "(a) The net profits or net losses of the joint venture shall be distributable, or chargeable, as the case may be, to the Venturers in the proportions set out below:

| *NAME* | *PROPORTION* |
|--------|--------------|
| * * * | * * * |
| DELLA RATTA | 25% |

By this agreement Della Ratta's share was increased from 10% to 25% in the first phase of development.

The oral agreement alleged in count three was an agreement by the joint venturers to share in the profits and losses arising from the partnership's dealings in land, and as such, the Statute of Frauds does not apply to it. The Court of Appeals in *Morgart v. Smouse,* 103 Md. 463, 63 A. 1070 (1906), stated in part:

> "It has been repeatedly held in different jurisdictions that an agreement by two or more persons to buy land and sell it and share either the profits or the profits and losses constitutes them partners for that

> venture and entitles either of them to an accounting in equity from the others of the joint transactions.... *A verbal agreement is sufficient to constitute a partnership to deal in lands, the Statute of Frauds not being applicable to such a contract.*" (Citations omitted. Emphasis supplied.)

*Id.* at 468; *see also Hohman v. Hohman,* 164 Md. 594, 165 A. 812 (1933); *Bruns v. Spalding,* 90 Md. 349, 45 A. 194 (1900). Thus, the trial court erred in granting appellees' motion to dismiss upon the ground that the Statute of Frauds barred appellants from bringing an action upon the agreement.

> *Judgment reversed; case remanded for further proceedings not inconsistent with this opinion. Costs to be paid by appellees.*