GUNSOREK et al., Appellees,

v.

HEARTLAND BANK et al.; Benedict, Appellant.

[Cite as *Gunsorek v. Heartland Bank* (1997), 124 Ohio App.3d 735.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE03–393.

Decided Dec. 31, 1997.

*Shayne & Greenwald Co., L.P.A.,* and *Gary D. Greenwald,* for plaintiffs-appellees.

*Luper, Sheriff & Neidenthal, Jack L. Stewart* and *Brigid E. Heid,* for defendant-appellant.

LAZARUS, Judge.

Defendant-appellant, Joseph W. Benedict appeals from a jury verdict in favor of plaintiffs-appellees, Larry F. Gunsorek and Robert S. Hart (together, plaintiffs or appellees), in the amount of $60,000 based upon a claim for breach of an oral partnership agreement. We find that appellees' claim for breach of a partnership

agreement is barred by the Statute of Frauds and that the trial court should have entered summary judgment for appellants. As a result, we reverse.

In 1985, Benedict and his wife acquired real property located in Gahanna, Ohio, at the intersection of U.S. Route 62 and Hamilton Road. Thereafter, from October 1991 through September 1992, Benedict and his wife entered into a series of four real estate contracts for purposes of selling the property. The first two of these purchase contracts involved Gunsorek as the purchaser and were contingent on Gunsorek obtaining certain zoning approvals. Gunsorek failed to obtain the zoning approvals, and each contract lapsed under its terms. The second and third purchase contracts involved Gunsorek and Hart as purchasers and were contingent on Hart being able to sell business property in Florida. Hart failed to sell the Florida property within time limits established by each contract, and each purchase agreement lapsed under its terms.

Thereafter, in late 1992 and early 1993, Benedict, Gunsorek, and Hart began discussing the possibility of developing the property for use as a shopping center through a limited partnership arrangement. According to appellees, on March 11, 1993, the parties entered into an oral partnership agreement whereby Benedict, as a limited partner, would contribute the property and Gunsorek and Hart, as general partners, would provide all necessary construction financing and operating expenses. Thereafter, Benedict's attorney drafted draft Articles of Limited Partnership ("Articles"), a copy of which was presented to Gunsorek on May 23, 1993. The draft Articles, as presented to Gunsorek, were stamped "DRAFT" on each page and above each signature line. The Articles were never signed by any party. However, Gunsorek contends that he, on behalf of himself and Hart, told Benedict that the draft Articles reflected their oral agreement of March, that the draft Articles were acceptable, and that no revisions needed to be made.

Under the terms of the draft Articles, Benedict, as a limited partner, agreed to contribute the real property valued at $385,000 as his initial capital contribution to the partnership. Gunsorek and Hart, as the general partners, agreed to contribute funds necessary for the construction and completion of the building on the property and pay operating expenses of the partnership. For the first fifteen years of the partnership, Benedict would receive an annual payment of $25,666.67 from the net profits of the partnership and this amount would be charged against Benedict's capital account. Annual profits remaining after paying the expenses of the partnership, including the annual $25,666.67 payment to Benedict, would be distributed one-half to Benedict and one-half to Gunsorek and Hart. In addition, Benedict's obligation to contribute the property was contingent on the general partners having obtained the necessary financing, approvals, and permits necessary to commence construction of the building.

Thereafter, Benedict suggested that Gunsorek contact Heartland Bank regarding obtaining financing for the partnership, and on June 17, 1993, Gunsorek met with Tiney McComb of Heartland Bank. During this meeting, Gunsorek claims, he approached the bank for financing on behalf of the alleged partnership, but McComb claims that Gunsorek held himself out as the owner of the real property and attempted to sell the property directly to Heartland Bank. The parties agree, however, that at some point during this meeting, McComb, on behalf of Heartland Bank, offered to purchase the real property for $400,000. Immediately after this meeting, Gunsorek telephoned Benedict to discuss Heartland Bank's interest in purchasing the property. According to Benedict, Gunsorek then offered to purchase the property from Benedict for $350,000 and then resell it to Heartland at a $50,000 profit. Gunsorek denies that he made such an offer and claims that when he told Benedict about Heartland Bank's offer, Benedict responded, "I'm not going to sell this to you. We don't have a partnership. * * * I'm going to sell it to the bank." Thereafter, the Benedicts and Heartland Bank entered into a real estate purchase contract on August 10, 1993. The property was transferred to Heartland Bank by February 21, 1994.

On September 20, 1995, appellees filed an amended complaint asserting claims for breach of fiduciary duty, tortious interference with a fiduciary duty, and breach of a partnership agreement against appellant. On March 6, 1996, Benedict filed a motion for summary judgment on the grounds that appellees' claims were barred by the Statute of Frauds. On May 17, 1996, the trial court denied this motion, and a jury trial was held on February 10 through 21, 1997. At the end of appellees' case in chief, appellant moved for directed verdict again based upon the Statute of Frauds, but the trial court denied this motion. The jury returned a verdict for appellees in the amount of $60,000 on their claim for breach of an oral partnership agreement. On March 17, 1997, the trial court entered judgment based upon the jury verdict. Appellant timely appealed and asserts the following three assignments of error:

"I. The trial court erred as a matter of law in denying Defendant Benedict's motion for summary judgment and his motion for a directed verdict because the Statute of Frauds bars Appellees' claim for breach of an oral partnership agreement.

"II. The trial court erred in denying Defendant's motion for a directed verdict because a limited partnership had not been formed under the requirements of R.C. Section 1782.08.

"III. The trial court erred in failing to strike the testimony of plaintiff's expert witness, Terrell Oetzel, on the grounds that his testimony as to lost profits was highly speculative."

In his first assignment of error, appellant contends that the trial court should have granted summary judgment and/or a directed verdict on appellee's claim for breach of a partnership agreement on the ground that it is barred by the Statute of Frauds. 'In particular, appellant contends that the Statute of Frauds bars the action because the alleged oral partnership agreement involved the transfer of an interest in real property owned by one of the partners prior to the formation of the alleged partnership. Appellees, on the other hand, contend that the element of partnership takes the agreement outside of the Statute of Frauds and that appellant waived his right to appeal the denial of his motion for a directed motion because he failed to renew his motion at the close of all the evidence. Because we hold that summary judgment should have been granted in this case, we sustain appellant's assignment of error without reaching the issue of whether appellant waived his right to appeal the denial of his motion for directed verdict.

Summary judgment pursuant to Civ.R. 56 is appropriate only where no genuine issues of material fact remain to be litigated, the moving party is entitled to judgment as a matter of law and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942–943, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 73–74, 375 N.E.2d 46, 46–48. Appellate review of summary judgments is *de novo. Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414.

Here, appellant moved for summary judgment based upon the affirmative defense of the Statute of Frauds. Appellant contended that even if an oral partnership agreement had been formed, enforcement of the agreement was barred because the requirements of the Statute of Frauds had not been satisfied. As evidence, appellant attached a copy of the unsigned draft Articles to his motion. In opposition, appellees contended, as they do on appeal, that the element of partnership takes the oral agreement out of the Statute of Frauds. Appellees also claimed, in opposition to the summary judgment motion and at trial, that the draft Articles reflected the terms of the oral agreement. Viewing the evidence most strongly in favor of the appellees, it must be assumed that an oral partnership agreement was formed and that the terms of the agreement were those contained in the draft Articles. Thus, whether summary judgment should have been granted depends upon whether the alleged oral agreement, as reflected in the draft Articles, falls within the Statute of Frauds as a matter of law. See *Horvath v. Nationwide Mut. Fire Ins. Co.* (1996), 108 Ohio App.3d 732, 735, 671 N.E.2d 638, 639 ("While error denying a motion for summary judgment

is rendered moot or harmless where a subsequent trial on the same issue demonstrates that there were genuine issues of fact supporting a judgment for the party opposing the motion, the error is not harmless where the denial is predicated upon a pure question of law.").

Ohio's Statute of Frauds is found in R.C. 1335.05 and states:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, *or upon a contract or sale of lands,* tenements, or hereditaments, *or interest in or concerning them,* or upon an agreement that is not to be performed within one year from the making thereof; *unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith* or some other person thereunto by him or her lawfully authorized." (Emphasis added.)

"This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity." *N. Coast Cookies v. Sweet Temptations* (1984), 16 Ohio App.3d 342, 348, 16 OBR 391, 398, 476 N.E.2d 388, 395. Furthermore, as the court in *N. Coast Cookies* stated:

"A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." *Id.*

An agreement will be removed from operation of the Statute of Frauds only through the doctrines of partial performance and promissory estoppel. *Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.,* (1994), 100 Ohio App.3d 111, 121, 652 N.E.2d 218, 224–225.

In this case, there is no dispute that there was no writing signed by the party to be charged, *i.e.,* Benedict. Nor is there a contention that either the doctrines of partial performance or promissory estoppel apply. Rather, appellees contend that a partnership formed to deal in real property for the generation of partnership profits is not, under Ohio law, within the Statute of Frauds and, therefore, is not required to be in writing. According to appellees, they merely sought to recover lost partnership profits due to Benedict's breach of the partnership agreement. Therefore, neither an interest in real property nor the Statute of Frauds was implicated. In support of their position, appellees cite *Wade v. DeHart* (1926), 26 N.P.N.S. 560, affirmed (1927), 26 Ohio App. 177, 159 N.E. 838; *Furth v. Farkasch* (1927), 26 Ohio App. 258, 159 N.E. 142; *Marszal v. Ameritrust* (Oct. 27, 1983), Cuyahoga App. No. 46496, unreported, 1983 WL 2697;

and *White v. Cornell* (Jan. 4, 1991), Lucas App. No. L–89–345, unreported, 1991 WL 399. A review of these cases reveals, however, that they do not support the broad rule advanced by appellees herein. Moreover, the cases are clearly distinguishable from the facts of this case. In short, the cases involve oral agreements to share in profits or commissions earned from the sale of real property or for the future purchase and development of real property not already owned by one of the partners.

In *Wade, supra*, the parties entered into an oral partnership agreement. Pursuant to this agreement, the defendant agreed to furnish funds necessary to purchase real property and construction materials, and the plaintiff agreed to contribute his skills and services to select the land and construct a building on the property. The parties also agreed that they would then sell the property once it was developed and that they would share in the profits. Thereafter, the plaintiff selected, and the defendant purchased, the real property for development. After the building was partially constructed and after plaintiff specifically requested that the agreement be reduced to writing, the defendant refused to recognize that there was a partnership between them. The court granted plaintiff's request for equitable relief and rejected defendant's claim that the agreement was unenforceable under the statute of frauds. In so doing, the court stated that "[a] court in equity may enforce the obligations of the parties, *inter se*, growing out of the partnership agreement to deal in the purchase and sale of land and share the profits though the agreement is oral, the element of partnership taking the transaction out of the statute." *Id.* at 565–566.

While the language of *Wade* is broad, the factual basis for its holding is narrow. The partnership agreement in *Wade* was an agreement to purchase and develop property not already owned by one of the parties, and as such, did not involve an obligation by one of the parties to convey property to the partnership. Significantly, the court recognized that the Statute of Frauds may apply when the partnership agreement involves such transactions:

"The court is of the opinion that the statute of frauds does not apply to a parol agreement creating a partnership or joint adventure, having most or all of the legal elements of partnership, for the purpose of purchasing, improving and selling real estate, either generally or in a single instance, on speculation or for profit and not contemplating a transfer of title from one of the parties to the other, or constituting either the vendor or purchaser from one to the other." *Id.* at 565–566. (Emphasis added.)

In *Furth, supra*, 26 Ohio App. at 259–260, 159 N.E. at 143, the Cuyahoga County Court of Appeals held that an oral partnership agreement to share in money realized from commissions earned by the defendant from the sale of real property did not fall within the Statute of Frauds. In so doing, the court noted

that, while an agreement to buy and sell property must be in writing, an oral partnership agreement to share commissions does not. *Id.* Thus, the alleged partnership agreement allegedly breached in *Furth* was an agreement to share profits and did not in any way involve or obligate a party to transfer or convey any interest in real property.

In *Marszal, supra,* the court affirmed claims based upon an alleged oral partnership agreement. According to the plaintiff, the parties jointly purchased and developed real property, dividing equally the costs of such venture and sharing equally in the profits. Significantly, the alleged oral partnership in *Marszal,* like that in *Wade,* did not contemplate the transfer and development of land already owned by one of the parties but involved the future purchase of land from a third party. Moreover, the issue of whether the Statute of Frauds barred the claim was not directly raised on appeal. Rather, the appeal challenged whether the evidence presented to the trial court was sufficient to warrant a finding that there was a partnership in the first place.

Finally, in *White, supra,* the plaintiffs alleged that they entered into an oral agreement with defendant in which defendant agreed to finance a development project and lease the property back to plaintiff for twenty-five years. Significantly, plaintiffs admitted that there was no partnership relationship between the parties, and no claim for breach of a partnership agreement was raised by the plaintiffs. Furthermore, while the Statute of Frauds was raised in the trial court related to the plaintiffs' breach of contract claim, the court of appeals did not address the issue.

As the above discussion demonstrates, none of the Ohio cases cited by appellee address the factual situation before us. Under the alleged partnership agreement here, appellant's primary, if not sole, obligation was to transfer property already owned by appellant to the partnership as his partnership contribution. In return, appellant would receive fifteen annual payments totalling the value of the property. Thus, appellees' contention, and cited authority, that their suit did not technically seek to enforce an interest in the real property fails to recognize that their claim is not predicated simply on an agreement to share in profits from the future sale of property or to jointly purchase and develop land owned by third parties. Appellees' breach-of-contract claim is based upon appellant's failure to convey the real property to the partnership.

In this regard, the parties have not cited any Ohio case authority specifically involving the enforcement of an oral promise by a partner to contribute real property to a partnership created for the purpose of developing and marketing that property. Nor have we found any. However, several courts in other jurisdictions have held that the Statute of Frauds does apply to claims for breach of oral partnership agreements predicated on the failure of a partner to convey

real property to the partnership or another partner as allegedly required by the terms of the agreement.

For example, in *E. Piedmont 120 Assoc., L.P. v. Sheppard* (Ga.App. 1993), 209 Ga.App. 664, 434 S.E.2d 101, the Court of Appeals of Georgia faced a factual situation very similar to that in the instant case. The court affirmed summary judgment against plaintiff's claims for breach of an alleged oral agreement to form a joint venture to develop defendant's real property into a shopping center. According to plaintiff, defendant was to contribute the land to the joint venture and plaintiff would contribute its expertise in developing the property. While recognizing that partnership agreements need not be in writing as a general matter, the court held that the Statute of Frauds was applicable in actions to enforce promises to contribute real property to a partnership or joint venture set up for the purpose of developing and marketing that property. *Id.* at 665 434 S.E.2d at 102. As the court stated, this holding furthered the goals of the Statute of Frauds:

"The evidentiary and cautionary purposes of the statute—to prevent fraud and perjury on the one hand and to ensure that parties are aware of the serious consequences of their actions on the other—are implicated when a promise to convey an interest in land is made in the context of a partnership or joint venture agreement just as they are when such a promise is made in any other context." *Id.* at 666, 434 S.E.2d at 103.

Similarly, in *Johnson v. Gilbert* (Ariz.App.1980), 127 Ariz. 410, 621 P.2d 916, the plaintiff, a building contractor, and defendant, an owner of real property, allegedly entered into an oral agreement to develop the property as a joint venture. Under the terms of the alleged oral agreement, defendant agreed to convey his real property to the partnership at an agreed price per acre as development progressed. When the defendant later refused to transfer the land to the partnership, the plaintiff filed suit. The court of appeals held that the alleged oral agreement was unenforceable under the Statute of Frauds. *Id.* at 413, 621 P.2d at 919. In so doing, the court rejected the plaintiff's broad contention that oral joint venture agreements for the acquisition, development, and sale of real property are not within the Statute of Frauds. *Id.* The court distinguished between oral partnership agreements concerning distribution of profits or compensation derived from the sale of land, which do not implicate the statute of frauds, and those which require the transfer of land from one partner to another. *Id.* Implicitly finding that the agreement in this case involved the transfer of real property from one partner to another (through a partnership entity owned and controlled by the parties equally), the court held that the Statute of Frauds applied. *Id.*

Finally, in *Backus Plywood Corp. v. Commercial Decal, Inc.* (S.D.N.Y. 1962), 208 F.Supp. 687, affirmed (C.A.2, 1963), 317 F.2d 339, the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit specifically addressed the distinction between oral partnership agreements that contemplate future real estate transactions with third parties and oral partnership agreements the very nature of which is a transfer of property from one partner to another. In *Backus Plywood*, the parties allegedly entered into an oral agreement in which the parties agreed to form a new corporation, which would acquire certain assets of the defendant corporation, continue its business, and lease its buildings and improvements. *Id.* at 689. When the defendant failed to turn over the business to the new entity, the plaintiff filed suit claiming a breach of the oral joint venture agreement. *Id.* at 690. The defendant filed for summary judgment, claiming that plaintiff's claims were barred by the statute of frauds under New York law. *Id.* at 693. The trial court granted the motion, and in so doing, rejected the plaintiff's claim that the joint venture arrangement made the statute of frauds inapplicable. Labelling plaintiff's assertion an "oversimplification," the court recognized the distinction between a joint venture to deal in real estate and one in which a conveyance of real property from defendant to plaintiff is contemplated. *Id.* at 694.

The court of appeals affirmed. Like the trial court, the court of appeals rejected the plaintiff's contention that the joint venture made the Statute of Frauds inapplicable noting the difference between agreements to purchase property in the future from third parties and those where the very nature of the partnership agreement is the transfer of real property from one partner to another:

"But appellant urges that the agreement alleged is a 'joint venture' agreement, and cites such decisions as [citations omitted] for the proposition that the statute of frauds does not apply to such agreements. Passing the dubious question of whether the alleged agreement constituted a joint venture * * * it is clear that the principle of the cases cited applies only to joint ventures to make purchases from or transact business with *third parties*. In such situation it is held that the fact that the agreement contemplates future purchases by the venturers from third parties does not bring it within the statute of frauds. But the label 'joint venture' will not remove the bar of the statute when, as here, the very essence of the asserted venture is a sale from one 'venturer' to the other * * *.

" * * * Any other rule would, of course, virtually emasculate the statute in this area." (Citation omitted.) 317 F.2d at 342–343.

We are persuaded by the reasoning of these cases and hold that, when the essential component of a partnership agreement is the conveyance of real

property from one partner to another (either directly or through the partnership), and the alleged breach of the agreement is the failure of the partner to convey the property, the Statute of Frauds is implicated. In such cases, there must be a writing signed by the party to be charged. Here, under the terms of the alleged oral partnership agreement, appellant's primary, if not sole, obligation was to transfer the real property already owned by the appellant to the partnership. In exchange, appellees would be paid fifteen annual payments totalling the assigned value of the property, and such payments would be charged against appellant's capital account. Thus, an essential component of the partnership agreement in this case was the transfer of an interest in the real property from appellant to appellees, and it was appellees' failure to convey such property that forms the basis of appellees' claim for breach of a partnership agreement.

Because we hold that the terms of the alleged oral partnership agreement in this case fall within the mandates of the Statute of Frauds, the trial court erred in failing to grant summary judgment for appellant. As a result, we find appellant's first assignment of error to be well taken.

Because our decision on appellant's first assignment of error is dispositive of the matter before us, we find that appellant's second and third assignments of error are, therefore, moot. See App.R. 12(A).

For the foregoing reasons, appellant's first assignment of error is sustained, his second and third assignments of error are moot, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK, P.J., and PEGGY BRYANT, J., concur.