1999-NMCA-147

992 P.2d 904

**Dorothy LIGHTSEY, Plaintiff–Appellant,**

**v.**

**Jimmy MARSHALL, Defendant–Appellee.**

**No. 19537.**

Court of Appeals of New Mexico.

Oct. 5, 1999.

Certiorari Denied, No. 26,019, Nov. 15, 1999.

Adam D. Rafkin, Adam D. Rafkin, P.C., Ruidoso, for Appellant.

Glen L. Houston, Robert J. Laughlin, Williams & Houston, Ltd., Hobbs, for Appellee.

## OPINION

**WECHSLER, J.**

{1} Plaintiff Dorothy Lightsey appeals from the judgment of the district court partitioning two separate properties, which the district court held to be the subject of a joint venture between Lightsey and Defendant Jimmy Marshall and ordering Lightsey to pay Marshall $5000 to equalize the parties' joint venture agreement. Lightsey contends on appeal that the district court erred in entering its judgment because (1) Marshall did not properly plead and substantial evidence did not support the existence of a joint venture, (2) the joint venture agreement failed to satisfy the requirements of the statute of frauds, and (3) Marshall was barred from relief because he was an unlicensed contractor who failed to meet the mandates of the Construction Industries Licensing Act, NMSA 1978, §§ 60–13–1 to –59 (1989, as amended through 1999) (Act). We affirm.

*Facts*

{2} After Lightsey and Marshall had been close friends for several years, they set out to purchase investment property together. Lightsey had some funds, and Marshall, who formerly had an electrical contractor's license, possessed the know-how to improve and maintain small properties. In December 1994, after they had investigated several properties in the Lincoln County real estate market, Lightsey and Marshall decided to purchase the property at 254 West Circle in Ruidoso Downs. Marshall testified that he arranged the terms of the deal. The property cost $35,000. Lightsey paid a $20,000 down payment and took title to the property in her name.

{3} Marshall testified that he owned a 50% interest in the West Circle property from the very beginning and that he and Lightsey agreed to share the profits equally after she received the return of her contributed funds. Lightsey, on the other hand, said that Marshall was entitled to one-half of the profits from the sale of the property above the selling price of $39,000 for the work that he performed on the property. On August 9, 1995, Lightsey executed a written

document to that effect which read in its entirety:

> I am the owner of the house at 254 W. Circle Drive in Ruidoso Downs, New Mexico. In the event this house is sold, Jimmie Marshall, of 813 East Midwest is to receive one/half of the profit made from the sale of this house over and above $39,000.00.

{4} Marshall also testified about his work with respect to the property. He stated that he cleaned and landscaped the yard, repaired the bathroom, painted the entire house, remodeled the kitchen, and patched the roof. According to Marshall, after he made the property liveable, he managed the rental of the property through three separate tenants. He understood the agreement from the very beginning to be that Lightsey and he would either split the rental proceeds or use them to buy another property.

{5} Following this understanding, Marshall negotiated the purchase of Unit 123, Building 5, of the Carrizo Lodge Condominiums also in Lincoln County. Marshall performed some work on the condominium and tried to rent it. Because he was unable to rent it, he moved into it himself rather than let it remain vacant.

{6} Although Lightsey testified that she and Marshall were never more than friends, Marshall stated that everything was fine with the properties until he refused to leave his girlfriend and move in with Lightsey. Ultimately, Lightsey determined that she intended to continue living in the West Circle house rather than sell it. Marshall testified that Lightsey instructed him to stay away from the West Circle property and to move into the condominium.

*Proceedings in District Court*

{7} Lightsey brought this action requesting the district court to quiet title to the West Circle property in her name and to partition the condominium by sale, granting her $7500 for the down payment check she paid from her bank account. Marshall counterclaimed for partition by sale of both properties, for the court to declare the rights, titles, and interests of the parties, and for reimbursement of $17,277 as his investment in the properties.

{8} Following a hearing on the merits, the district court found (1) that the parties entered into a joint venture in which both were to be "joint venturers/owners" in the properties, (2) that subsequent to their original agreement, the parties agreed that Marshall would receive one-half of the profits of any sale of the West Circle property over $39,000, (3) that as part of the joint venture, Marshall was to work on and secure renters for the West Circle property, which Marshall did, (4) that the goal of the joint venture was to rent the West Circle property for investment purposes and that Lightsey later changed her mind and decided to live in the property herself rather than use it for investment only, (5) and that the joint venture paid for $5000 of the $7500 down payment on the condominium.

{9} The district court partitioned the properties to divide and allocate the respective interests of the parties in the joint venture. It awarded Lightsey the West Circle property and Marshall the condominium, both subject to the accompanying mortgages. To equalize the parties' interests regarding the joint venture, the court ordered Lightsey to pay Marshall the sum of $5000, which the court calculated to be the balance of Marshall's share of the profits from the West Circle property after deductions to equalize the parties' investment and share of profits in the condominium.

*Existence of a Joint Venture*

{10} The district court entered a finding of fact and a conclusion of law that Lightsey and Marshall entered into a joint venture form of enterprise. Lightsey contends that the district court abused its discretion in making this finding and conclusion. Lightsey argues that Marshall did not plead the existence of a joint venture and that the evidence does not support the existence of a joint venture. We cannot agree with Lightsey's arguments.

{11} Even though Marshall did not specifically mention that he and Lightsey were joint venturers in his counterclaim, the district court could properly reach that conclusion. Marshall alleged that the parties

owned the properties as tenants in common and that both invested in the properties. He asked the court for partition and for the court to "ascertain and declare the rights, titles, and interests of the parties to the property." At trial, both parties testified without objection about the nature of their business relationship. Although the words may not have been used, testimony at trial described the essential terms of a joint venture. Marshall submitted requested findings of fact and conclusions of law that included the court's ultimate finding and conclusion that the parties entered into a joint venture.

{12} Parties may try an issue not raised in the pleadings by express or implied consent. *See* Rule 1–015(B) NMRA 1999; *White v. Wayne A. Lowdermilk, Inc.*, 85 N.M. 100, 101, 509 P.2d 575, 576 (Ct.App. 1973). By the evidence presented at trial, the issue of the business relationship of the parties included an issue of whether a joint venture existed. Thus, the latter issue was impliedly tried as part of the former. Furthermore, the district court granted relief, which Marshall had requested in his counterclaim. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 9, 800 P.2d 1063, 1066 (1990). Marshall based his request for relief on the business relationship of the parties. We fail to see any prejudice to Lightsey merely because the legal terminology of "joint venture" was not used earlier in the proceedings.

■ {13} Nor do we agree with Lightsey that substantial evidence does not support the existence of a joint venture. A joint venture exists when two or more parties (1) enter into an agreement, (2) to "combine their money, property or time in the conduct of some particular business deal," (3) agree to share in the profits and losses of the venture jointly, and (4) have the "right of mutual control over the subject matter of the enterprise or over the property." *Fullerton v. Kaune*, 72 N.M. 201, 204, 382 P.2d 529, 532 (1963).

{14} In this case, Marshall testified that he and Lightsey agreed to acquire property together for investment; Lightsey would pay the initial down payment, and he would work on the property to prepare it for rental. The

parties agreed that Marshall would share in the profits of the West Circle property. Thereafter, as Marshall testified, they agreed to use rental profits to acquire the condominium property. Marshall undertook to find the properties, to work on them, and to rent them. He testified that he negotiated the terms of the acquisitions and managed the rental of the West Circle property. Lightsey and Marshall acquired the condominium in both of their names. It does not matter whether the calculation of cost for determining the break-even point was Lightsey's contribution or funds, or Lightsey's funds plus Marshall's in-kind contribution. Because Marshall, according to his testimony, contributed significant time, effort, and materials toward the West Circle property, he would have shared in the losses if the property were not sold at a profit.

■ {15} Although Lightsey did not agree with Marshall's description of the business relationship in many respects, when reviewing a substantial evidence claim, we review whether there is substantial evidence to support the district court's conclusion, not whether the court could have reached another conclusion. *See Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986). There was substantial evidence for the district court to find and conclude that the parties agreed between them that Lightsey would contribute funds and Marshall would contribute his time and effort so that the two of them would control and share jointly in the profits and losses from the properties in which they invested. *See Fullerton*, 72 N.M. at 204, 382 P.2d at 532.

*Statute of Frauds*

{16} The district court entered its conclusion of law that Marshall "acquired an interest, as joint venturer, in the 254 West Circle property under the written agreement of the parties, as well as the verbal understandings surrounding the written agreement." New Mexico has adopted the English statute of frauds by adopting the common law. *See* NMSA 1978, § 38–1–3 (1875–76); *Ades v. Supreme Lodge Order of Ahepa*, 51 N.M. 164, 171, 181 P.2d 161, 165

(1947). The statute of frauds requires that an action brought on a contract concerning an interest in land be based upon an agreement in writing signed by the party to be charged or one authorized by the party to be charged. *See Pitek v. McGuire,* 51 N.M. 364, 370–71, 184 P.2d 647, 651 (1947). According to Lightsey, the document she executed did not set forth the essential terms and conditions of the oral agreement of the parties to satisfy the statute of frauds.

{17} We initially observe that *Fullerton,* relied upon by both parties, does not require us to rule for either party in this case. In *Fullerton,* our Supreme Court faced the question of whether the statute of frauds applied to an action for specific performance of an oral agreement concerning the payment of royalty interests in mineral leases, a real property interest. *See Fullerton,* 72 N.M. at 202–04, 207, 382 P.2d at 531–32, 534. The Supreme Court assumed, but did not hold, that the existence of a joint venture would remove the oral agreement from the prohibition of the statute of frauds. *See id.* at 207, 382 P.2d at 534. Because the Supreme Court concluded a joint venture did not exist, its holding does not serve as precedent for us.

{18} Rather, we base our holding on the purposes of the statute of frauds—to minimize fraud and deceit and to emphasize the importance of the transaction. *See Herrera v. Herrera,* 1999–NMCA–034, ¶ 13, 126 N.M. 705, 974 P.2d 675. In doing so, we distinguish this case, in which the parties embarked on a joint venture to invest in real estate and share in the profits, from those in which the joint venture entails the transfer of real property between joint venturers. In the latter circumstance, the purposes of the statute of frauds have bearing even though the transaction is between those with an existing relationship. *See Gunsorek v. Heartland Bank,* 124 Ohio App.3d 735, 707 N.E.2d 557, 563 (1997) (statute of frauds applies to joint venture when essential component of venture is transfer of real property from one venturer to another). When the joint venture does not contemplate the transfer of real property between venturers, the likelihood for fraud and deceit without a writ-ing is diminished and the immediate consequences of the transaction are not of the same magnitude as when real property is exchanged. Additionally, because a joint venture "is generally considered to be a partnership for a single transaction," *Hansler v. Bass,* 106 N.M. 382, 387, 743 P.2d 1031, 1036 (Ct.App.1987), the protections of a fiduciary relationship and the respective duties owed by one partner to another serve to ensure that venturers deal honestly and fairly with each other in accounting for profits and losses of the joint venture, *see Kaljian v. Menezes,* 36 Cal.App.4th 573, 42 Cal.Rptr.2d 510, 516 (1995).

{19} As a result, the reasons for applying the statute of frauds are removed from this transaction. We therefore do not agree with Lightsey that the interests at issue in this case implicate the statute of frauds.

{20} The fact that the parties did not originally acquire the West Circle property in both of their names does not vary our analysis as Lightsey suggests that it should. Lightsey and Marshall did not intend to transfer title of the West Circle property from Lightsey to Marshall or the joint venture. They planned only to share in the profits, a plan that does not require compliance with the statute of frauds, as noted by other jurisdictions and authorities. *See Johnson v. Gilbert,* 127 Ariz. 410, 621 P.2d 916, 919 (Ariz.Ct.App.1980); *Kaljian,* 42 Cal. Rptr.2d at 515; *Jacobs v. Thomas,* 26 Conn. App. 305, 600 A.2d 1378, 1380–81 (1991); *Blynn v. Hirsch,* 124 So.2d 314, 315 (Fla. Dist.Ct.App.1960) (per curiam); *Della Ratta v. Broadneck Dev. Corp.,* 44 Md.App. 507, 410 A.2d 32, 36 (1980); *First Pa. Mortgage Trust v. Dorchester Sav. Bank,* 395 Mass. 614, 481 N.E.2d 1132, 1138 (1985); *Scott v. Kempland,* 264 S.W.2d 349, 357 (Mo.1954); *Natuzzi v. Rabady,* 177 A.D.2d 620, 576 N.Y.S.2d 326, 328 (1991); *Gunsorek,* 707 N.E.2d at 563; *McLaughlin v. Laffoon Oil Co.,* 446 P.2d 603, 609 (Okla.1968); *Malnar v. Carlson,* 128 Wash.2d 521, 910 P.2d 455, 460 (1996) (en banc); *see also* 4 Caroline M. Brown, *Corbin on Contracts* § 17.12, at 464 (Joseph M. Perillo, ed., 1997); 9 Samuel Williston, *Williston on Contracts* § 25:17, at 601–04 (Richard A. Lord, ed., 4th ed.1999).

Lightsey has not cited any contrary authority.

{21} Moreover, the district court did not transfer title in this case; it only partitioned interests in the manner in which a court would issue an accounting of joint venture interests. Such is the right of a party to a joint venture or partnership. *See Mendel v. Hewitt*, 185 A.D.2d 387, 585 N.Y.S.2d 832, 834 (1992); *cf. Quirico v. Lopez*, 106 N.M. 169, 171, 740 P.2d 1153, 1155 (1987) (noting that a default by a joint venturer may serve to forfeit right to an accounting).

*Need for a Contractor's License*

{22} Lightsey further contends that the district court's award of damages was improper because Marshall was not a properly licensed contractor during the period when he performed work on either of the properties. The district court found that Marshall performed significant contracting work on and repairs to the West Circle property. It further found that Marshall did not allege in any pleadings that he was a licensed contractor at the time he performed work on the properties and that Marshall was not so licensed (except that he had held an electrical contractor's license, a fact not pertinent to the issues at trial). It concluded, however, that Marshall did not need a contractor's license because of his joint venture interests in the property. According to the district court, its judgment compensated Marshall under the terms of the joint venture, not as a contractor. We agree with the district court.

{23} We find resolution of the issue within the meaning of "compensation" in Section 60–13–30(A) of the Act, which provides:

> No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the ... Act ... without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

Under Section 60–13–3(A)(2), "contractor" includes one who undertakes to construct, al-

ter, or repair a building as constituted by the properties included within this lawsuit.

{24} Our Supreme Court has stated the objective of the Act to be a "healthy, ordered market in which consumers may contract with competent, reliable construction contractors." *Mascarenas v. Jaramillo*, 111 N.M. 410, 413, 806 P.2d 59, 62 (1991). It identified the problem addressed by the Act as "the exploitation of the public by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license." *Id.* Our courts have applied the licensing requirement of the Act to carry out the deterrent effect of the legislature. Thus, our Supreme Court applied the statutory prohibition to maintaining an action to require an unlicensed contractor to refund compensation received for unlicensed contracting services, *see id.* at 414, 806 P.2d at 63, and has refused to permit the defense of unjust enrichment to allow an unlicensed contractor to be paid for contracting services rendered, *see Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 102, 739 P.2d 968, 971 (1987).

{25} But the Act does not absolutely bar suit for claims relating to contracting work by unlicensed contractors. Section 60–13–30(A) specifically precludes only those collection claims that seek "compensation" for contracting. Thus, even if one performs services that fall within the Act's definition of contracting, if the relief sought is not compensation for such services, the Act permits relief. That is the circumstance we face in this case.

{26} Under the parties' joint venture agreement as determined by the district court, Lightsey and Marshall agreed to be joint owners of the properties. As an owner, Marshall undertook different responsibilities from that of a contractor. As a contractor, Marshall would have been obligated to provide contracting services for which he would have received the benefit of compensation. As a joint owner of the properties, he undertook to perform repair and construction work, but his reward was not direct payment for this work; rather, it was the rents and profits which he and Lightsey hoped to accrue from their expenditure of funds and

efforts. In the position of joint owner, Marshall assumed risks which would not have been the burden of a contractor. These included the risks of damage to or destruction of the property as well as the risk of adverse market fluctuation. In this capacity, Marshall additionally shared the non-contracting burdens of selecting and renting the properties. Marshall's responsibilities of ownership entitled him to share in the profits of the venture. Correspondingly, if there were no profits, his interest meant that he would not receive financial benefit. Because of these significant differences between Marshall's interests and those of a contractor, Marshall did not seek by his action "compensation for the performance" of contracting under Section 60–13–30(A). His counterclaim was for his share of profits earned by the joint venture, or the gain on his investment. *Cf. Institute for Essential Housing, Inc. v. Keith,* 76 N.M. 492, 494, 416 P.2d 157, 158 (1966) (noting that a claim seeking payment on a promissory note presents a question separate from whether an unlicensed contractor can seek compensation for contracting work performed).

*Conclusion*

{27} We conclude that substantial evidence supports the district court's findings of fact and conclusions of law, that the statute of frauds does not apply to the parties' joint venture agreement, and that Section 60–13–30(A) does not bar Marshall's counterclaim. We affirm the district court's judgment.

{28} **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.