[Cite as *Dart v. Katz*, 2021-Ohio-1429.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| GREG DART, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 28913 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-354 |
| | : | |
| ELLIOTT KATZ, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of April, 2021.

. . . . . . . . . . .

JONATHAN F. HUNG, Atty. Reg. No. 0082434, 109 North Main Street, Suite 800, Dayton, Ohio 45402
     Attorney for Plaintiffs-Appellants

ERIC E. WILLISON, Atty. Reg. No. 0066795, 4876 Cemetery Road, Hilliard, Ohio 43026
     Attorney for Defendant-Appellee, Elliott Katz

CHARLES R. GRIFFITH, Atty. Reg. No. 0031388 and JOSHUA J. FRAVEL, Atty. Reg. No. 0093541, 522 North State Street, Westerville, Ohio 43082
     Attorneys for Defendants-Appellees, Journal Herald Building, LLC and Windsor Fire Blocks, LLC

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiffs-Appellants, Greg Dart, G.L. Dart General Contracting, Inc., and Intrigue Property Management, LLC,[1] appeal from a judgment dismissing their second amended complaint against Defendants-Appellees, Elliott Katz,[2] Journal Herald Building, LLC ("JHB"), and Windsor Fire Blocks, LLC ("Windsor"). For the reasons discussed below, the judgment will be affirmed in part and reversed in part, and the matter will be remanded to the trial court for further proceedings.

I. Facts and Course of Proceedings

{¶ 2} Because this case is before us on a dismissal under Civ.R. 12(B)(6), the allegations in the second amended complaint are accepted as true. *See Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

{¶ 3} On January 24, 2020, Dart filed a complaint for money damages and declaratory judgment against Katz, JHB, and Windsor. On the same day, Dart filed an amended complaint, which was identical to the first except that certain documents were attached. Both the complaint and amended complaint contained the following claims against Katz and JHB: constructive trust; breach of fiduciary duty (including claims that Katz and JHB acted with malice); breach of trust; breach of contract; and promissory estoppel. Dart also alleged tortious interference against Windsor and unjust enrichment against JHB, and he asked for a declaratory judgment against all parties.

{¶ 4} On January 29, 2020, JHB filed a motion for a temporary restraining order

---

[1] We will refer to Appellants collectively as "Plaintiffs" or individually as "Dart," "G.L Dart General Contracting, or Intrigue.

[2] The record is inconsistent on the spelling of the Katz's first name, Elliott. We use the spelling used by the trial court in its orders of dismissal.

and a preliminary injunction, asking the court to preclude Plaintiffs from trespassing in the building that was the subject of the action. After a hearing, the court denied the request for a temporary restraining order on February 13, 2020. The court also set a hearing on the preliminary injunction for March 19, 2020, but the injunction request was later withdrawn. On March 13, 2020, Katz filed an answer and a counterclaim against Dart for fraud/forgery and malicious prosecution. Dart filed an answer to the counterclaim on March 20, 2020.

{¶ 5} On March 23, 2020, Dart filed a motion asking the court to allow him to file a second amended complaint to add G.L. Dart General Contracting and Intrigue as plaintiffs. After the court granted the motion, a second amended complaint (hereafter "Complaint") was filed, including these parties. The Complaint alleged that:

9. On January 30, 2015, Dart became the sole owner of the Journal Herald Building. There were no debts on the building. Dart and Katz later agreed that they would jointly develop the Journal Herald Building. Among other things, they intended to develop a nightclub and other businesses in the building. Katz formed and on November 16, 2015 filed JHB's Articles of Incorporation with the Florida Secretary of State. Katz owned and operated JHB through Savion International Limited Partnership (Savion), a Wyoming limited partnership that he and his wife Naomi Katz owned 98% of.

10. Thereafter Katz promised, and Dart and Katz agreed, that Katz and/or JHB would not encumber or transfer the Journal Herald Building if Dart were to transfer the Journal Herald Building to Katz or to an entity that

Katz owned or operated. At the time, Dart was indebted to the IRS as a result of a prior employee's embezzlement. Dart agreed to transfer the building to JHB upon Katz's and JHB's agreement not to transfer or encumber the building. Katz and JHB would hold the building for Dart's benefit. Consistent with their agreement, Dart paid Katz $150,000 so that Katz would issue a check for the same amount at closing, with the closing proceeds going to the IRS.

11. On December 15, 2015, per the agreement with Katz, Dart and JHB entered into a Contract to Purchase Real Estate (the Purchase Contract). A copy of the Purchase Contract is attached as Exhibit 1.

12. On February 16, 2016, per the agreement with Katz, Dart transferred the Journal Herald Building to JHB. A copy of the deed is attached as Ex. 2. The net effect of the transaction is that JHB became record title holder of the Journal Herald Building for no money and that JHB and Katz held the building in constructive trust for Dart's benefit.[3]

13. As a prerequisite for transfer, and after much delay, Dart and Katz memorialized their agreement on June 7, 2016 when they entered into an Agreement (Agreement). A copy of the Agreement is attached as Exhibit 3. Under the Agreement, Katz and JHB agreed not to encumber or transfer the Journal Herald Building.

12. Katz later repeated his promises that Dart was the owner of the

_____

[3] The Complaint contains two paragraphs 12 and 13. When needed, we will make clear which number we are discussing.

building.  For example, on June 9, 2016, Katz stated, "The Journal Herald Building is 100% owned by Greg Dart."  He added, "It is your building.  I'm just a placeholder.  That's all I am.  On March 27, 2017, at a dinner meeting at the Dayton Club Katz reiterated that Dart owned the Journal Herald Building.

13.  Katz kept up his end of the deal, for a while.  But then he fell on hard times and changed his mind.  For example, non-party DRBC Limited (DRBC) obtained a judgment against Katz's limited partnership Savion for over $1 million.  See, Judgment Entry in *DRBC, Limited v. Savion International, L.P., et al,* Montgomery County Common Pleas Court Case #2018-CV-2382, filed May 31, 2018.  Dart had placed mechanics liens on other buildings that Katz controlled in downtown Dayton, Ohio.  On June 27, 2018, Katz as owner and agent of JHB, executed a Mortgage Deed to Defendant Windsor wrongfully encumbering the Journal Herald Building. A copy of the Mortgage Deed is attached as Ex. 4.

14.  Before entering into the Mortgage Deed, Windsor knew that Katz and JHB were precluded from encumbering the Journal Herald Building without Dart's permission as a result of, among other things, several meetings and phone conversations with Dart during April 2018. Windsor thus knew that Katz and JHB held the building in constructive trust for Dart's benefit.

15.  Since he executed the Deed, Dart, individually, and through Dart, Inc., and Intrigue, has continued to occupy, pay for, and maintain the

Journal Herald Building. Specifically, the Dart parties have remodeled the building and paid utility bills, fire and security bills, taxes, and insurance. No Defendant has reimbursed the Dart parties for their expenditures.

Complaint, ¶ 9-15.

{¶ 6} The same claims for relief were raised in this complaint as had been previously asserted. On April 25, 2020, Katz filed an answer to the Complaint as well as a counterclaim. Answer and Counterclaims of Defendant Katz to Plaintiffs' Second Amended Complaint ("Answer and Counterclaims of Katz"). In the Answer, Katz admitted that JHB was the record owner of the Journal Herald Building. *Id.* at ¶ 3 (admitting the allegations in ¶ 5 of the Complaint). Katz further stated that he "operated JHB through Savion International Limited Partnership." *Id.* at ¶ 8.

{¶ 7} In addition, Katz admitted that "Plaintiff paid Katz $150,000.00 at a closing whereat the Journal Herald Building was transferred to JHB and then Katz provided a check to the IRS in the amount of $150,000.00." *Id.* at ¶ 9. Further, Katz admitted that "a judgment has been taken against him by a third party unrelated to this case," that "Plaintiff Dart may have placed mechanics liens on some of Defendant Katz's properties," and that "acting as an officer of Defendant JHB, LLC, he encumbered the property in question." *Id.* at ¶ 14. Katz again asserted a counterclaim against Dart and raised various affirmative defenses. On the same day, Katz filed a motion to dismiss the complaint.

{¶ 8} JHB and Windsor never filed answers but, on May 12, 2020, they filed a motion to dismiss the Complaint. [4] Following a status conference, Plaintiffs filed

---

[4] JHB and Windsor as mortgagor and mortgagee were represented by the same attorney.

memoranda opposing both motions to dismiss, and all Defendants filed reply memoranda in July 2020.

{¶ 9} On September 2, 2020, the trial court issued two decisions dismissing Plaintiffs' Complaint. In the first decision, the court dismissed the claims against Katz; in the second, the court dismissed the claims against JHB and Windsor. *See* Orders (Sep. 2, 2020). Both dismissals were for failure to state a claim under Civ.R. 12(B)(6). *Id*. The court included a Civ.R. 54(B) certification on the order granting dismissal of the claims against JHB and Windsor, but it did not include such a certification on the order granting dismissal of the claims against Katz.

{¶ 10} Plaintiffs then appealed from the trial court's decisions on September 24, 2020. On October 20, 2020, Plaintiffs filed a motion asking to supplement the record to include Katz's dismissal of his counterclaims pursuant to Civ.R. 41(A). Construing the motion as one to amend the notice of appeal, we allowed the appeal to proceed, provided that Plaintiffs filed an amended notice of appeal by November 16, 2020. *See* Decision and Entry (Nov. 10, 2020), p. 1-2. As instructed, Plaintiffs filed an amended notice of appeal on November 10, 2020.

{¶ 11} With this background in mind, we will consider the parties' arguments.

## II. Dismissal of Katz

{¶ 12} Plaintiffs' First Assignment of Error states that:

The Trial Court Erred When It Granted Defendant-Appellee Elliot Katz's Motion to Dismiss Because Plaintiffs-Appellants Alleged Sufficient Facts Demonstrating Their Claims for Relief.

{¶ 13} Under this assignment of error, Plaintiffs assert arguments concerning each ground for relief in the Complaint. For purposes of clarity and convenience, we will consider these matters separately, but out of order.

A. Breach of Contract

{¶ 14} This dispute concerns the sale of the Journal Herald Building ("the Property"), an encumbrance placed on the Property after the sale, and compensation for work and money Plaintiffs expended on the Property. Concerning these matters, Count 4 of the Complaint contained breach of contract claims against Katz and JHB.

{¶ 15} In its decision, the trial court concluded that evidence about an agreement between Katz and Dart prior to the sale and transfer was barred by the parol evidence rule. In addition, the court held that Katz could not have entered into any binding agreement after the sale, in his individual capacity, because he did not have an ownership interest in the Property. Finally, the court held that the post-sale agreement failed to set forth any valid consideration for a promise not to encumber or transfer the Property.

{¶ 16} According to Plaintiffs, Dart and Katz had an agreement before the sale that they would jointly develop the Property, and the purchase contract for the sale did not fully encompass their agreement. They further contend that a subsequent partnership agreement contained additional provisions that would further the partnership's objectives. Plaintiffs further argue that consideration need not be expressed in an agreement, but that consideration existed in the form of the loan Dart gave to Katz and JHB to purchase the Property.

{¶ 17} In response, Katz maintains that the purchase contract for the Property was

the entire agreement between the parties (Dart and JHB) and that the subsequent written agreement was between two different parties (Dart and Katz). Katz also argues, as he does concerning other points of alleged error, that Dart had "unclean hands" and should not benefit from his own wrongdoing. We will address this latter argument first. Before doing so, we will briefly discuss the standards for evaluating motions to dismiss.[5]

{¶ 18} In *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995), the Supreme Court of Ohio noted that:

> Our standard of review when presented with a motion to dismiss predicated on Civ.R. 12(B)(6) is well established. The factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. It must appear beyond doubt that plaintiff can prove no set of facts entitling her to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

*Vail* at 280. We also apply de novo review to the trial court's decision. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶ 19} The allegation about Dart's wrongdoing is that by financing the transaction

---

[5] Because Katz filed an answer before filing his motion to dismiss, the trial court's ruling with respect to Katz must be viewed as having granting a motion on the pleadings pursuant to Civ.R. 12(C) rather than Civ.R. 12(B)(6). *State ex rel. Mancino v. Tuscarawas Cty. Court of Common Pleas*, 151 Ohio St.3d 35, 2017-Ohio-7528, 85 N.E.3d 713, ¶ 8, and fn. 2. However, the applicable standards under these sections of Civ.R. 12 are the same. *Id.*

and having a check issued to the IRS, Dart had "unclean hands." " 'The "clean hands doctrine" of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy.' " *Reid v. Wallaby's Inc.*, 2d Dist. Greene No. 2011-CA-36, 2012-Ohio-1437, ¶ 31, quoting *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45, 610 N.E.2d 450 (9th Dist.1991). We noted in *Reid* that this defense does not apply where a party is not attempting to invoke a court's equitable powers, but is suing for breach of contract. *Id.*, citing J*amestown Village Condo. Owners Assn. v. Market Media Research, Inc.*, 96 Ohio App.3d 678, 688, 645 N.E.2d 1265 (8th Dist.1994).

**{¶ 20}** Furthermore, affirmative defenses generally "cannot be raised in a Civ.R. 12(B)(6) motion because they normally cannot be proved without reliance upon evidentiary materials outside the complaint." *Reasoner v. City of Columbus*, 10th Dist. Franklin No. 02AP-831, 2003-Ohio-670, ¶ 12. This general rule, however, does not apply when " 'the existence of the affirmative defense is obvious from the face of the complaint.' " *Id.*, quoting *Mankins v. Paxton*, 142 Ohio App.3d 1, 9, 753 N.E.2d 918 (10th Dist.2001). *See also Schmitz v. Natl. Collegiate Athletic Assn.*, 155 Ohio St.3d 389, 2018-Ohio-4391, 122 N.E.3d 80, ¶ 41 (noting the difficulty of establishing affirmative defenses in a Civ.R. 12(B)(6) proceeding).

**{¶ 21}** The difficulty was illustrated here, as the allegations in the complaint did not indicate that Dart violated good faith. As noted, Dart owed $150,000 to the IRS due to a prior employee's embezzlement. Regardless of the method of payment, however, there was no indication in the Complaint that the debt to the IRS was unsatisfied or that Dart was attempting to evade the debt. In fact, he apparently paid it.

{¶ 22} Courts have also held that "[n]o court will lend its aid to a party who founds his cause of action on an immoral or illegal act." *Giffin v. Crestview Cadillac*, 10th Dist. Franklin No. 09AP-278, 2009-Ohio-6569, ¶ 47, citing *Nahas v. George*, 156 Ohio St. 52, 57, 99 N.E.2d 898 (1951). (Other citation omitted.) Thus, " ' "[w]herever * * * two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere, to relieve either of those persons, as against the other, from the consequences of their own misconduct." ' " *Id.*, quoting *Goudy v. Gebhart*, 1 Ohio St. 262, 265 (1853). (Other citation omitted.)

{¶ 23} In *Griffin*, the plaintiffs were actually attempting to engage in an illegal action and defraud the IRS by obtaining a business mileage deduction through manipulation of mileage when they purchased a car. *Id.* at ¶ 48 and fn. 2 (noting attempt to violate 26 U.S.C. 179 and 26 C.F.R. 1.179–1(d)). When the dealer accidentally prevented this by registering the correct mileage, the plaintiffs filed suit, claiming that the dealership had negligently represented what it would do with the title and had fraudulently induced plaintiffs into purchasing the car. *Id.* at ¶ 46. The trial court, however, granted summary judgment on these claims, concluding that the plaintiffs could not recover on a "fraudulent scheme gone awry." *Id.*

{¶ 24} Notably, *Griffin* involved summary judgment, rather than dismissal of a complaint. Nonetheless, as indicated, the Complaint here did not reveal an intent to defraud the IRS; it appeared the IRS was paid in full on the debt. Accordingly, the unclean hands doctrine or law precluding enforcement of claims based on illegal acts did not justify the Complaint's dismissal.

{¶ 25} Furthermore, in *Crawford v. Hawes*, 2013-Ohio-3173, 995 N.E.2d 966 (2d

Dist.), a co-partner was allowed to recover on unjust enrichment claims even though the trial court found that the parties had entered into an illegal contract. *Id.* at ¶ 38. Specifically, the parties in that case had orally agreed to be partners in operating a bar business and to share profits. Because they both had felony convictions, they arranged for a third-party (the defendant's mother) to obtain the liquor license and sign a commercial lease. *Id.* at ¶ 3. After they had operated the business for several months, an altercation ensued, and the defendant fired the plaintiff and barred him from entering the bar. *Id.* at ¶ 4. The plaintiff then filed a lawsuit raising various claims, including breach of contract and unjust enrichment. *Id.* at ¶ 5. After a trial, the plaintiff was granted recovery on the basis of unjust enrichment, and we affirmed that part of the judgment on appeal. *Id.* at ¶ 40. Consequently, Katz's argument about unclean hands or illegality is without merit.

{¶ 26} Turning now to the breach of contract claim in the Complaint, Dart became the sole owner of the Property in January 2015, and no debt was carried on it. Without considering any oral agreements, it is clear that on December 15, 2015, Dart and JHB entered into a purchase contract pursuant to which Dart agreed to sell the Property to JHB behalf for the sum of $150,000. Ex. 1 attached to Complaint. It is also undisputed that Dart gave Katz $150,000, which Katz used to purchase the Property in the name of a limited liability company (JHB) that he had formed about a month earlier. Katz signed the contract on JHB's behalf.

{¶ 27} The "General Provisions" section of the purchase contract stated that:

> Upon acceptance, this offer and the attached addenda shall become
> a complete agreement binding and inuring to the benefit of Purchaser and

Seller and their heirs, personal representatives, successors, and assigns, and shall be deemed to include all the terms and conditions agreed upon, there being no oral conditions, representations, warranties, or agreements. Any subsequent conditions, representations, warranties, or agreements shall not be valid and binding upon the parties unless in writing and signed by both parties.

Complaint, Exhibit 1, p. 2.

{¶ 28} Later, on February 17, 2016, Dart signed a General Warranty Deed conveying the Property to JHB.   Exhibit 2 attached to Complaint.

{¶ 29} Under the parol evidence rule, " 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements."   *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000).   However, "[a]n integration clause is nothing more than the contract's embodiment of the parol evidence rule, i.e., that matters occurring prior to or contemporaneous with the signing of a contract are merged into and superseded by the contract."   *Rucker v. Everen Securities, Inc.*, 102 Ohio St.3d 1247, 2004-Ohio-3719, 811 N.E.2d 1141, ¶ 6.   Thus, the integration clause here is nothing more than a repetition of the parol evidence rule.

{¶ 30} Exceptions to the rule include fraudulent inducement.   *Galmish* at 28. However, while the allegations in the complaint raise later fraud by Katz, the complaint did not indicate that Katz had fraudulently induced Dart to enter into the purchase contract.   Other exceptions include the "collateral agreement" rule, which is that "the final

contract is only a partial integration of the parties' agreement and that a term that should have been included in the contract was not included." *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 30. Plaintiffs argue that this theory applies, because there was an agreement between Katz and Dart before the conveyance, and the purchase agreement was only part of their agreement. We disagree, however, because a " 'collateral agreement must not contradict the terms of the written agreement, and the agreement must be one that would naturally be omitted from the written instrument.' " *Id.*, quoting *Patrick v. Ressler*, 10th Dist. Franklin No. 04AP-149, 2005-Ohio-4971, ¶ 28. (Other citation omitted.) The agreement that Katz and/or JHB would not encumber the Property is not the type of term that would naturally be omitted from a purchase contract.

{¶ 31} Another common exception is that parol evidence will be permitted to clarify mistaken or ambiguous terms. *Williams* at ¶ 31. However, the terms in the purchase contract do not appear to be mistaken or ambiguous, although, ironically, they do not provide for a time that possession of the Property is to be turned over to JHB. Complaint, Exhibit 1, at p. 2.

{¶ 32} Yet another exception is proof of a "condition precedent to a contract." *Beatley v. Knisley*, 183 Ohio App.3d 356, 2009-Ohio-2229, 917 N.E.2d 280, ¶ 15 (10th Dist.). "[A] condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties" *Mumaw v. W. & Southern Life Ins. Co.*, 97 Ohio St. 1, 11, 119 N.E. 132 (1917). The oral agreement here, however, was in the nature of a "condition

subsequent," or something that would occur after the sale, i.e., that neither Katz nor JHB would encumber the property.

{¶ 33} Accordingly, the exceptions to the parol evidence rule do not apply and the terms of the purchase contract cannot be contradicted by the parties' prior oral agreements. Nonetheless, based on taking the allegations in the complaint as true, the purchase contract was void for lack of consideration. "The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 14, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶ 34} Contracts are not binding unless they are supported by consideration. *Id.* "Consideration may consist of either a detriment to the promisee or a benefit to the promisor. * * * A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* Here, there was no benefit to Dart. While a check for $150,000 was sent to the IRS at closing, Dart furnished the money. And, as Katz pointed out in the trial court, there was no reason why Dart could not have sent the money himself. Motion to Dismiss of Defendant Katz, p. 2. Therefore, the purchase agreement conferred no right, interest, or profit on Dart. There was no indication in the complaint that Dart or his companies owed the IRS more than was paid.

{¶ 35} Furthermore, there was no detriment to JHB, the promisee. According to the allegations in the complaint, JHB paid nothing for the purchase and did nothing to

maintain the property thereafter. Instead, Plaintiffs paid all taxes, insurance, and other upkeep on the premises.

{¶ 36} As a further matter, there were two written agreements at issue in this case. The first was the purchase contract for the sale of the Property. However, the second was initially an oral agreement between Dart and Katz, pursuant to which they agreed to jointly develop the Journal Herald Building for use as a nightclub and for other businesses. They further agreed that, if Dart transferred the property to Katz or an entity that Katz owned (which ultimately turned out to be JHB), neither Katz nor that entity would transfer or encumber the building (which then carried no debt). The second written agreement was the June 7, 2016 written agreement ("Agreement") between Dart and Katz, which expressed their prior oral agreement and elaborated on it. We note that Katz denies signing this agreement, but his signature appears on it, and his denial is irrelevant for purposes of analyzing the decision on the motion to dismiss.

{¶ 37} The trial court concluded that evidence of the initial oral agreement was precluded by the parol evidence rule, as no fraud or mistake was alleged. Concerning the second agreement, the court found that the agreement about transfer of the Property was only between Dart and Katz individually, and that Katz could not enter into a transfer agreement because he did not own the Property. In addition, the court found a lack of consideration. Order Sustaining Motion to Dismiss Katz, p. 7.

{¶ 38} As an initial point, we disagree with the trial court concerning allegations of fraud. While the Complaint does not contain a separate fraud claim, there are certainly allegations of fraudulent and deceptive conduct on Katz's part.

{¶ 39} Consistent with the trial court's view, Katz (as well as JHB) argue that the

June 7, 2016 Agreement was only between Dart and Katz and had nothing to do with JHB. However, this argument ignores the fact that Katz, as a member, could act on JHB's behalf and bind JHB.

**{¶ 40}** The Agreement signed by Katz and Dart (again, taken as true) states as follows:

This Agreement is regarding 111 E. 4th Street and the Journal Herald Building, Llc. (JHB, Llc.), collectively known as "the building," and is between Greg Dart and Elliot Katz (the Parties).

By entering into this Agreement, the Parties agree to the following:

1) Elliot Katz is the sole corporate member of JHB, Llc.

2) Greg Dart loaned Elliot Katz money to buy the building and for operating capital for the JHB, Llc. for purposes of financing the club business, for investments in the property, and for potential TIFF and other types of programs for the building.

3) It is the intent of the Parties to form some type of partnership in the club venture at some point.

4) The building is still 100% owned by Greg Dart and is not to be borrowed against, used as an asset or leveraged without written approval by Greg Dart.

5) The building is not to be transferred, deed altered, moved out of JHB, Llc., nor added to umbrellas or any and all other ventures undertaken unless approved in writing by Greg Dart.

6) No other corporate partners are to be added to JHB Llc without

the express written approval by Greg Dart.

7)  At this time of signing, and in the future, there is no money borrowed or any of the above mentioned circumstances are to occur and the building is 100% free and clear.

8)  Any activities of any kind and circumstances relating to the building, investment, other partnerships, and any and all other ventures or activities must be approved in writing by Greg Dart directly.

Exhibit 3 attached to Complaint.

**{¶ 41}** The Agreement was signed on June 7, 2016.  Consequently, at that time, Katz agreed that he was the sole owner of JHB.[6]  According to the Complaint, "[o]n June 27, 2018, Katz as owner and agent of JHB, executed a Mortgage Deed to Defendant Windsor wrongfully encumbering the Journal Herald Building."  Complaint at p. 4, ¶ 13.[7] Exhibit 4 attached to the Complaint indicated that the amount of the mortgage was $244,726.06.  In answering the Complaint, Katz admitted that "acting as an officer of Defendant JHB, LLC, he encumbered the property in question * * *."  Answer and Counterclaims of Katz, p. 3, ¶ 14.

**{¶ 42}** Contrary to the trial court's holding, consideration existed for the June 7, 2016 Agreement.  Dart stated, and Katz agreed, that Dart had loaned Katz money not just to buy the building, *but also for operating capital for JHB and for other matters related*

---

[6] The Agreement stated that Katz was the sole "corporate" member, which makes no sense, as Katz was a person. However, for our purposes, this is not significant.  The intention clearly was that Katz was the sole member of JHB.

[7] As noted above, the Complaint has two paragraphs 13.   We are referring to the second paragraph 13, on page 4.

*to the building.* This was a detriment to Dart and a benefit to the promisee, Katz, and to his principal, JHB. Katz, as a member of JHB, had authority to act for and to bind JHB.

{¶ 43} "An Ohio limited liability company is neither a corporation nor a partnership, but [a] hybrid containing attributes of each." *Germano v. Beaujean*, 2013-Ohio-3846, 997 N.E.2d 1238, ¶ 15 (6th Dist.), citing *Dexxon Digital Storage, Inc. v. Haenszel*, 161 Ohio App.3d 747, 2005-Ohio-3187, 832 N.E.2d 62, ¶ 64 (5th Dist.). "Ownership of the L.L.C. rests not in partners or shareholders, but with members. A 'member' is statutorily defined as one whose name appears on the records of the L.L.C. as an owner of a membership interest in the company." *Id.*, quoting R.C. 1705.01(G).

{¶ 44} Furthermore, "[w]hether the management of the company is reserved to its members or, by authority of an operating agreement, vested in a manager, a member or "manager *may act as an agent of the company.*" (Emphasis added.) *Id.* at ¶ 28.[8] "Acts of an agent done within the discharge of her duties and within the scope of her authority, whether the authority is express, implied, or apparent, are binding on the principal." *Vienna Beauty Prods. Co. v. Cook*, 2015-Ohio-5017, 53 N.E.3d 808, ¶ 7 (2d Dist.).

{¶ 45} Thus, while Katz did not directly own the Property, as a member of JHB, he was able to act as JHB's agent and to bind it. *See* R.C. 1705.35 ("Instruments and documents providing for the acquisition, mortgage, or disposition of property of a limited

---

[8] "In Ohio, 'member-managed' LLCs are the default rule, and an LLC desiring to be 'manager-managed' must so specify in the company's operating agreement." *Brooks Capital Servs., L.L.C. v. 5151 Trabue Ltd.*, 10th Dist. Franklin No. 12AP-30, 2012-Ohio-4539, ¶ 12, citing R.C. 1705.24. If an LLC is manager-operated, a member may not have the ability to act as agent. *Id.* at ¶ 14-26. However, this distinction is irrelevant here, as Katz has indicated he had the authority as an officer to act for JHB. This is not something that could be decided on a motion to dismiss or motion for judgment on the pleadings, anyway, as it would depend on JHB's operating agreements.

liability company are valid and binding upon the company if the instruments or documents are executed by one or more members of the company or, if the management of the company has not been reserved to its members, by one or more of its managers.").[9]

**{¶ 46}** This authority to bind the LLC is consistent with established agency principles, which state that "an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal." *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608, 590 N.E.2d 254 (1992).

**{¶ 47}** Moreover, as to whether Katz, despite being a member of JHB, could be personally liable, that depends on evidence, not the allegations in a complaint, which is only required to contain "a short and plain statement of the claim for relief." Civ. R. 8(A).

**{¶ 48}** " 'Generally, a party signing a contract as a corporate officer is not individually liable. However, if a corporate officer executes an agreement in a way that indicates personal liability, then that officer is personally liable regardless of his intention. Whether a corporate officer is personally liable upon a contract depends upon the form of the promise and the form of the signature.' " *Baltes Commercial Realty v. Harrison*, 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, ¶ 54, quoting *Spicer v. James*, 21 Ohio App.3d 222, 223, 487 N.E.2d 353 (2d Dist.1985). For example, in *Spicer*, the appellants were held personally liable on a lease where they signed individually and did not have any corporate designation after their names. *Spicer* at 223.

---

[9] We note that the General Assembly has repealed R.C. 1705.35, effective January 1, 2022, and as of that date, will replace R.C. Chap. 1705 with new R.C. Chap. 1706, per the Ohio Revised Limited Liability Company Act. *See* Am. Sub. S.B. 276, 2020 Ohio Laws File 82. The new law applies to all Ohio LLCs. Among other things, new R.C. 1706.08(C)(5) will prohibit operating agreements from eliminating or limiting "the liability of a member or other person for any act or omission that constitutes a bad faith violation of the implied covenant of good faith and fair dealing."

{¶ 49} Here, while acknowledging that he was the sole member of JHB, Katz also signed individually in an agreement listed as being between himself and Dart. Therefore, he was signing both as an agent for JHB and on his own behalf, promising not to encumber the Property. Specifically, the only way in which the Property could be encumbered was by Katz obtaining a loan and signing a mortgage on JHB's behalf, which he did. Having made a promise not to encumber the building, and choosing to breach the agreement, Katz could be held personally liable for the breach of contract. Consequently, the trial court erred in dismissing this claim against Katz in Court 4 of the Complaint.

## B. Constructive Trust/Unjust Enrichment

{¶ 50} Plaintiffs' next argument is that the trial court erred in dismissing their claim for a constructive trust because the allegations in the complaint showed that Katz was unjustly enriched to their detriment. This claim was found in Count 1 of the Complaint, which included both Katz and JHB.

{¶ 51} The trial court rejected this claim because there was no allegation of fraud. The court also concluded that Plaintiffs could not demonstrate inequitable conduct by Katz because Katz signed the agreement with Dart in his individual capacity and JHB owned the Property. Order Sustaining Motion to Dismiss Katz, p. 3-4. In response to Plaintiffs' brief, Katz argues that JHB was a separate legal entity and that Plaintiffs waived the idea of piercing the corporate veil because they failed to raise it in the trial court.[10]

---

[10] We note that piercing the corporate veil was impliedly raised in Plaintiffs' reply to Katz's motion to dismiss, during which Plaintiffs asserted that "JHB had no will of its own outside of Katz's control." Plaintiffs' Memo Opposing Katz's Motion to Dismiss, p. 8.

**{¶ 52}** Plaintiffs argue, however, that they need not pierce the corporate veil to hold Katz liable; they are asking for relief from Katz's personal conduct and from JHB's conduct.

**{¶ 53}** Most of these points have already been addressed above and support a constructive trust claim against Katz.  And, as noted, based on the allegations in the complaint, the contract between Dart and JHB is void.   However, JHB retains property belonging to Dart, and JHB and/or Katz may also retain funds belonging to Dart.   It is possible that other LLCs may be involved as well.[11]    At the pleadings stage, it is not possible to know where or to whom the funds from the JHB mortgage were disbursed.

**{¶ 54}** Turning to the constructive trust issue, such a "trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud."  *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 19.   However, " 'a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.' "   *Id.*, quoting *Ferguson v. Owens*,

---

[11] When the motion for a temporary restraining order was filed in January 2020, an affidavit was included from Alexius Dorsey.  *See* Motion for Temporary Restraining Order, Ex. C attached to the affidavit of Attorney Joshua J. Fravel.  Dorsey claimed that "Windsor JH, LLC" was the sole member of JHB at that time, and that JHB owned the Journal Herald Building.  It is unclear how or if Windsor JH is related to Windsor, since they have nearly the same name.  It is also unclear what the relationships among the various LLCs are.  As noted, Windsor and JHB are represented by the same counsel. It also appears that Katz sold his interest in JHB at some point to an entity called Savion International, LP, which then allegedly became the sole member of JHB.  *See* Ex. A attached to Dorsey's Affidavit

Subsequently, in January 2019, Savion sold its interest in JHB to Windsor JH**,** LLC. Discovery would clarify this dizzying array of relationships (which appear to be related to Katz) and would allow tracing of the Property and addition of parties, should a constructive trust need to be imposed.

9 Ohio St.3d 223, 226, 459 N.E.2d 1293 (1984). (Other citations omitted.) " 'In applying the theories of constructive trusts, courts also apply the well[-]known equitable maxim, "equity regards [as] done that which ought to be done." ' " *Id.* "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.' " *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938).

{¶ 55} With respect to unjust enrichment, the elements are " '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ("unjust enrichment").' " *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984), quoting *Hummel* at 525.

{¶ 56} We have already rejected the claim that, accepting the Complaint as true, Dart lacked clean hands and equitable principles could not apply. Thus, there was no barrier to imposition of a constructive trust. Furthermore, the trial court was incorrect in stating that fraud must exist. Given the principles of law set forth in *Cowling* and *Ferguson*, clearly fraud was not required. In fact, the Supreme Court of Ohio has said that such a trust is imposed " 'against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.' " *Ferguson* at 225, quoting 76 American Jurisprudence 2d, Trusts, Section 221, at 446 (1975).

{¶ 57} A constructive trust may be imposed even when the property has been subsequently transferred to third parties, so long as the asset can be traced. *Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, at ¶ 26.

{¶ 58} For example, in *Cowling*, a wife had signed irrevocable documents transferring stocks to her husband. These documents gave him exclusive possession and control over the stocks, which both parties had previously owned. After the transfer, the husband placed the stocks in transfer-on-death accounts, naming his children from a prior marriage as beneficiaries. He later cashed in some of the stock and gave this money to his children as well. The total amount in funds and stock transferred was $325,358.69. *Id.* at ¶ 3.

{¶ 59} After the husband's death, his wife, Grace, filed an equitable claim against the children for a declaratory judgment to establish a constructive trust over the transferred assets. She also filed claims against her husband's estate for "breach of contract, conversion, breach of fiduciary duty, negligent misrepresentation, and fraud." *Id.* at ¶ 4. There was no evidence in the case that the children had committed fraud. After a trial, the jury awarded Grace $255,354, and the court imposed a constructive trust on the children based on the relative percentages of funds and stock they had received. *Id.* at ¶ 6-7. Because the children had no apparent involvement in the transfer of the funds and stock, it is clear that fraud is not required and that a constructive trust can be imposed on property in the hands of third parties. Accordingly, the trial court erred in holding otherwise.

{¶ 60} Given these points, discussion of piercing the corporate veil is unnecessary. The complaint alleges conduct that, should the evidence so merit, justifies imposition of

a constructive trust on any party or entity that unlawfully holds property or funds belonging to Plaintiffs. *Thies v. Wheelock*, 2017-Ohio-8605, 100 N.E.3d 903, ¶ 41 (2d Dist.). As previously noted, it is currently unclear who retains the funds that are alleged to belong to Plaintiffs. Discovery will provide the answer.

**{¶ 61}** In responding to this part of the assignment of error, Katz argues that he cannot be held liable for unjust enrichment because Plaintiffs conferred nothing on him; instead, the benefits were conferred on JHB. Katz also notes that Plaintiffs alleged in the complaint that Katz "owned and operated JHB through Savion International, Limited Partnership," "which was never made a party." Appellee Katz's Brief, p. 13. In addition, Katz argues that where a contract exists, unjust enrichment does not apply.

**{¶ 62}** Katz's argument is disingenuous to the extent it implies that Savion owns JHB and was not sued. Katz, in his answer, admitted that he "*operated* JHB through Savion," a Wyoming limited partnership. (Emphasis added.) Answer and Counterclaims at ¶ 8. Katz did not say that Savion *owned* either JHB or the Property.[12] Furthermore, "Civ.R. 8(E)(2) permits alternative or hypothetical pleading, or even the use of inconsistent claims." *Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 92, 326 N.E.2d 267 (1975). Civ.R. 8(E)(2) also provides that "[a] party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." Given that this case was dismissed based on allegations in

---

[12] As indicated in fn. 11, Katz sold his interest in JHB to Savion at some point. Clearly, Savion was not the owner of JHB, either when the purchase contract was signed or when the Property was encumbered, because Katz stated that he signed the mortgage as an officer of JHB. Answer and Counterclaims at ¶ 14. However, Katz would not have been an officer in JHB if he had previously sold his interest in JHB to Savion. This contradicts Katz's contention that Plaintiffs should have sued Savion as the "owner" of JHB.

the complaint, it is premature to require Plaintiffs to choose among theories of recovery.

{¶ 63} We also note that Katz has argued that he did not enter into a contract with Dart. If this is true, Katz may nonetheless be held liable under the theory of unjust enrichment if the evidence shows that he unjustly retained funds or property that rightfully belong to Plaintiffs. Plaintiffs are not required to prove their case at the pleading stage.

{¶ 64} As a final matter, even if the contract between Dart and JHB is found to be void and the Property is required to be restored to Dart, a property that was unencumbered now apparently carries a debt load of at least $244,726.06. Restoring the Property to Dart would not resolve that issue, which would require a finding either on a contractual basis (the "Agreement") or under principles of unjust enrichment. Accordingly, the trial court erred in dismissing Count 1 against Katz.

## C. Breach of Fiduciary Duty

{¶ 65} Under this part of the assignment of error, Plaintiffs contend that the trial court erred in finding that the Complaint failed to state a claim for breach of fiduciary duty. The breach of duty claim was contained in Count 2 and was asserted against both Katz and JHB.

{¶ 66} According to Plaintiffs, Dart and Katz entered into a partnership or joint venture to develop the Property before the Property was transferred to JHB. They then later entered into a written partnership agreement, pursuant to which Katz agreed not to encumber the Property. Plaintiffs therefore contend that Katz owed Dart a fiduciary duty that was breached. In addressing the claims against Katz, the trial court did not discuss these points. Instead, the court repeated that Katz had no interest in the Property and

that Katz signed the June 7, 2016 Agreement individually rather than as an agent for JHB. Order Sustaining Motion to Dismiss Katz, p. 6. We have already disagreed with the court's finding.

{¶ 67} In responding to Plaintiff's brief, Katz states that Plaintiffs did not discuss a partnership agreement giving rise to a fiduciary duty in the trial court, but only mentioned it in connection with a constructive trust.[13] Katz further argues that the "partnership agreement" of June 7, 2016 (the written agreement between Katz and Dart) expressed only a future intent to form a partnership.

{¶ 68} Partners in Ohio owe a fiduciary duty to each other, as do persons entering into joint ventures. *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶ 123 (2d Dist.); *Nilavar v. Osborn*, 127 Ohio App.3d 1, 20, 711 N.E.2d 726 (2d Dist.1998).

{¶ 69} "A fiduciary duty is generally defined as ' "[a] duty of utmost good faith, trust, confidence, and candor owed by a fiduciary * * * to the beneficiary * * *; a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person." ' " *DiPasquale* at ¶ 122, quoting *In re Trust of Bernard*, 9th Dist. Summit No. 24025, 2008-Ohio-4338, ¶ 20. (Other citation omitted.)

{¶ 70} Partnership and joint venture agreements may be oral, but they must also comply with the Statute of Frauds. *Gunsorek v. Heartland Bank*, 124 Ohio App.3d 735, 739, 707 N.E.2d 557 (10th Dist.1997); *Olympic Holding Co. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 46. *See also Crawford*, 2013-Ohio-3173, 995 N.E.2d 966, at ¶ 3-5, 38, and 40 (oral agreement to run bar was enforced, and plaintiff

---

[13] This means the partnership concept was, in fact, raised in the trial court.

recovered on unjust enrichment after he was fired by other partner and not allowed back in the premises). However, oral agreements may be "removed from operation of the Statute of Frauds * * * through the doctrines of partial performance and promissory estoppel." *Gunsorek* at 740, citing *Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.*, 100 Ohio App.3d 111, 121, 652 N.E.2d 218 (8th Dist.1994).

{¶ 71} Concerning Katz's first point, the Complaint specifically stated that the parties "agreed that they would jointly develop the Journal Herald Building." Complaint at ¶ 9. The Complaint also described certain actions taken in furtherance of this agreement, such as formation of JHB's articles of incorporation, loans to Katz, and the transfer of the Property. *Id.* at ¶ 10-12. And thereafter, Dart, consistent with the agreement, remodeled the building and paid utility bills, taxes, insurance, and fire and security bills. *Id.* at ¶ 15. Accordingly, Plaintiffs' partial performance of the alleged oral agreement, as alleged in the Complaint, removed it from the operation of the Statute of Frauds. *Thies,* 2017-Ohio-8605, 100 N.E.3d 903, at ¶ 30. Moreover, the label used was not dispositive, as both joint ventures and partnerships create fiduciary duties.

{¶ 72} Furthermore, while the June 7, 2016 Agreement between Dart and Katz also referred to an intent to form "some type of partnership in the club venture at some point," this intent did not negate the fact that a joint venture or partnership already existed. Specifically, paragraph two of the Agreement indicated that Dart loaned Katz money for matters *besides* financing a club business. These matters included "operating capital for JHB," "investments in the property," and "potential TIFF and other types of programs for the building." Complaint, Exhibit 3, at ¶ 3.

{¶ 73} The final paragraph of the Agreement also referred to the fact that "[a]ny

activities relating to * * * other partnerships, and any and all other ventures" must be approved by Dart. *Id.* at ¶ 8. The reference to other partnerships or other ventures implied that such already existed. While the references was somewhat ambiguous, this was a reasonable inference, as is permitted in connection with motions to dismiss. *Vail,* 72 Ohio St.3d at 289, 649 N.E.2d 182.

{¶ 74} As noted, Count 2 of the complaint alleged that Katz and JHB owed a fiduciary duty to Dart. *Id.* at ¶ 20. This reference to a fiduciary duty cannot be read as referring to anything other than a joint venture or partnership, because the only other contract involved in this case, other than the Agreement, was the purchase contract. However, while provisions for creating fiduciary duties can be written into contracts, typically the mere existence of a contract does not create fiduciary duties. *E.g., McConnell v. Hunt Sports Ent.*, 132 Ohio App.3d 657, 687, 725 N.E.2d 1193 (10th Dist.1999). Every contract does impose "an implied duty of good faith and fair dealing in its performance and enforcement." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 42.

{¶ 75} Since the purchase contract did not contain any express terms imposing a fiduciary duty, the claim in the Complaint for breach of fiduciary cannot be read as referring to anything other than a joint venture or partnership, which could have been either the Agreement (which implied a partnership or joint venture) or the oral agreement (which implied a joint venture), followed by part-performance.

{¶ 76} Finally, contrary to Katz's claims, Plaintiffs did mention in the trial court, in connection with the breach of fiduciary duty claim, that Katz took on a fiduciary duty when he and Dart entered into their "deal." Plaintiffs' Memo Opposing Katz's Motion to

Dismiss, at p. 6. While the reference could have been more explicit, the fact is that the Complaint also referred to a joint venture. Accordingly, we conclude that the matter was sufficiently raised in the trial court and in the Complaint. Therefore, the trial court erred in dismissing Count 2 of the Complaint as to Katz.

{¶ 77} In ruling on this matter, we stress that we make no findings about the merits of the case. We are simply deciding whether the Complaint was properly dismissed.

### D. Breach of Trust Agreement

{¶ 78} The next issue concerns breach of a trust agreement and the existence of a trust agreement. This concerns Count 3 of the Complaint, which was asserted against both Katz and JHB and stated that they were trustees. This count further alleges that these defendants breached their obligations by executing the mortgage deed and that the trial court should order them to remove the mortgage lien on the Property pursuant to R.C. 5801.01(B), convey the Property to Dart, and reimburse Dart for all expenditures he made for the building. Complaint at ¶ 24-26.

{¶ 79} In their brief, Plaintiffs contend that R.C. Chap. 5801 applies to this case with respect to Katz and further argue that, under R.C. 5801.01, Dart may seek a remedy (damages) for Katz's breach of trust. The trial court discussed this point only in conjunction with constructive trust and merely stated that, because there was no constructive trust, Katz "could not be liable for breach of trust." Order Sustaining Motion to Dismiss Katz, p. 5.

{¶ 80} We have already discussed our disagreement with the trial court's constructive trust findings and need not repeat the reasons here. Nonetheless, R.C.

Chap 5801 does not apply to this case. "The Ohio Trust Code ('OTC'), effective January 1, 2007, 2006 Am.Sub.H.B. 416, No. 126, found in R.C. Chapters 5801 through 5811, is Ohio's adaptation of the Uniform Trust Code, promulgated in 2000 ('UTC'). The UTC is the first effort at national codification of the law of trusts, drawing from the common law, Restatements, and current statutes. *See* R.C. 5801.01, Official Comment, Uniform Trust Code Section 103." (Footnote omitted.) *Dueck v. Clifton Club Co.*, 2017-Ohio-7161, 95 N.E.3d 1032, ¶ 43 (8th Dist.).

{¶ 81} R.C. 5801.02 (which corresponds to Section 102 of the Uniform Trust Law) discusses the applicability of Chap. 5801. R.C. 5801.02 states, in pertinent part, that:

> Except as otherwise provided in any provision of Chapters 5801. to 5811. of the Revised Code, those chapters apply to charitable and noncharitable inter vivos express trusts and to trusts created pursuant to a statute, judgment, or decree that requires the trust to be administered in the manner of an express trust.

{¶ 82} The Comment to Section 102, which is included as an "Official Comment" under R.C. 5801.02, states that "The Uniform Trust Code, while comprehensive, applies only to express trusts. Excluded from the Code's coverage are resulting and constructive trusts, which are not express trusts but remedial devices imposed by law."

{¶ 83} There was no written express trust here, and the requested constructive trust is a remedial device that the law could impose. Accordingly, the trial court did not err in rejecting the application of R.C. Chap. 5801, even though the court's reason was incorrect.

{¶ 84} In the remainder of this discussion, Plaintiffs argue that a constructive trust

arose due to unjust enrichment. We have already agreed that such a trust could arise under the circumstances, and we need not address that further.

**{¶ 85}** Plaintiffs' final point concerns whether they stated a claim that Katz breached the terms of the "constructive trust." However, equity creates constructive trusts in hindsight to prevent unjust enrichment, and they are "imposed irrespective of intention." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 172, 297 N.E.2d 113 (1973). As a result, there would be no terms for the constructive trust, and nothing that could have been breached.

**{¶ 86}** In light of these facts, Plaintiffs did not state a claim against Katz for breach of a trust agreement. "[W]e may affirm a correct judgment for reasons different from those upon which the trial court based its decision." *State v. Ellington*, 2d Dist. Montgomery No. 17405, 1999 WL 301482, *2 (May 14, 1999). Accordingly, Plaintiffs' assignment of error is overruled as to the dismissal of Count 3 of the Complaint against Katz.

### E. Promissory Estoppel

**{¶ 87}** The next issue concerns Count 5 of the Complaint and promissory estoppel as it relates to Katz. The trial court rejected Plaintiffs' promissory estoppel claim against Katz because the property had already been transferred to JHB by the time Katz signed the June 7, 2016 Agreement. The court also concluded that there was no indication that Katz was signing as a JHB representative and that Dart, therefore, could not have reasonably relied on Katz's alleged promise not to encumber the property. Order Sustaining Motion to Dismiss Katz, p. 7-8.

{¶ 88} In contending that the decision was incorrect, Plaintiffs point to facts we have already discussed, like Katz's admitted ability to bind JHB and acts that occurred before and after the Agreement. Plaintiffs further argue that detrimental reliance is apparent, because the Property is now subject to a substantial lien, and they have also expended "considerable sums" to maintain and improve it. *See* Appellants' October 20, 2020 Brief, p. 14.

{¶ 89} In responding, Katz repeats the same arguments we have already discussed, including that oral promises cannot vary the terms of a written agreement, that promises regarding the transfer of real property must be in writing to be enforceable, and that Plaintiffs could not have reasonably relied on discussions about forming a partnership because of the allegations in the Complaint that Savion owned JHB.

{¶ 90} "An action for damages under promissory estoppel provides an adequate remedy for an unfulfilled or fraudulent promise. 'The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice.' " *Olympic Holding Co.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, at ¶ 39, quoting *Doe v. Univision Television Group, Inc.*, 717 So.2d 63, 65 (Fla.App.1998). (Other citation omitted.)

{¶ 91} To succeed in claiming promissory estoppel, "[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990).

{¶ 92} Assuming for purposes of argument that no valid written contract between Plaintiffs and Katz existed, the allegations in the complaint indicate that both before and after the property was transferred, Katz represented that he, acting on behalf of JHB, would not encumber the property, that he was merely a "placeholder" to protect Dart's interests, and that he would work with Dart to prepare the property for various uses, including (but not limited to) a club.    In reliance on these promises, Dart transferred the property, and Plaintiffs expended additional funds for matters we have previously mentioned, like remodeling, taxes, utility bills, and so on.    Based on the allegations in the complaint, the reliance appears to have been justified, as Katz and Dart apparently worked together on other projects in the area as well.    The fact that the relationship later soured does not discount the fact that justifiable reliance on Katz's promises once existed. As we noted earlier, Plaintiffs were permitted to plead alternate theories of recovery in the complaint.    Consequently, Court 5 of the Complaint stated a promissory estoppel claim against Katz.

## F.   Declaratory Judgment

{¶ 93} Plaintiffs' final argument with respect to Katz is that the trial court erred in dismissing their request for declaratory judgment.    The request was contained in Count 8 of the Complaint and was directed to Katz, JHB, and Windsor.

{¶ 94} Under the law, "a court can dismiss a declaratory judgment action under Civ.R. 12(B)(6) for only two reasons: '(1) where there is no real controversy or justiciable issue between the parties * * * or (2) when the declaratory judgment will not terminate the uncertainty or controversy, under R.C. 2721.07 * * *.' "    *AEI Group, Inc. v. Ohio Dept. of*

*Commerce*, 67 Ohio App.3d 546, 550, 587 N.E.2d 889 (10th Dist.1990), quoting *Fioresi v. State Farm Mut. Auto. Ins. Co.*, 26 Ohio App.3d 203, 203-204, 499 N.E.2d 5 (1st Dist.1985). In light of the above discussion, a real controversy existed between Plaintiffs and Katz, and the trial court therefore erred in dismissing the declaratory judgment claim against Katz in Count 8 of the Complaint.

{¶ 95} Based on the preceding discussion, the First Assignment of Error is sustained in part and overruled in part.

### III. Dismissal of JHB and Windsor

{¶ 96} Plaintiffs' Second Assignment of Error states that:

The Trial Court Erred When It Granted Defendants-Appellees Journal Herald Building, LLC's and Windsor Fire Blocks, LLC's Motion to Dismiss Because Plaintiffs-Appellants Alleged Sufficient Facts Demonstrating Their Claims for Relief.

{¶ 97} This assignment of error, like the first, raises arguments directed to various parts of the complaint. Again, we will consider each argument separately. The first argument relates to claims for unjust enrichment and constructive trust.

### A. Unjust Enrichment/Constructive Trust

{¶ 98} In Count 7 of the Complaint, Plaintiffs alleged that JHB unjustly retained benefits, including the Property, and Plaintiffs' payment of utility bills, etc., and remodeling, but did not pay for them. The trial court did not specifically discuss this claim but concluded that JHB could not be held liable for any of the claims asserted against it

because it was not a party to the June 7, 2016 Agreement.   Order Sustaining JHB and Windsor's Motion to Dismiss at p. 4.

{¶ 99} According to Plaintiffs, the trial court erred in concluding that unjust enrichment did not apply.   They specifically object to the findings that parol evidence barred consideration of the June 7, 2016 Agreement and that JHB was not a party to the Agreement.    According to Plaintiffs, the parol evidence rule was irrelevant because promissory estoppel was an alternative to a breach of contract claim.   Plaintiffs further argue that Katz executed the Agreement on JHB's behalf.   They also note that JHB unjustly retains the Property without having paid any compensation and also retains the benefit of improvements and maintenance that Plaintiffs performed.

{¶ 100} In responding to all of Plaintiffs' arguments, JHB and Windsor repeat the arguments made in Katz's brief, i.e., that parol evidence could not alter the terms of the written purchase contract, that JHB and Windsor were not parties to the June 7, 2016 Agreement and were not bound by it, and that Plaintiffs cannot raise a new "partnership" agreement on appeal.   We also note that Windsor has not addressed the claim against it for tortious interference with a business, nor did the trial court specifically address this issue when it dismissed the Complaint.

{¶ 101} For the reasons previously discussed, we conclude that the trial court erred in dismissing the unjust enrichment claim in Count 7 against JHB.   Given the allegations in the complaint, the purchase contract lacked consideration and was void.

{¶ 102} In the absence of a contract, unjust enrichment was an appropriate claim, because JHB is holding property that belongs to another.   Imposition of a constructive trust is also an available remedy, and Windsor, as the mortgage holder, would be a party

needed for resolution of the action, even if a tort claim had not been asserted against it. *Compare Salmons v. Bowers*, 7th Dist. Columbiana No. 97-CO-31, 1999 WL 771279, *2 (Sept. 3, 1999) (adding mortgage holder to case involving dispute over property where claims included unjust enrichment and breach of contract).

{¶ 103} As a general rule, " '[a] mortgagee is entitled to the protection of a bona fide purchaser, if he gives value without notice of prior equities.' " *Peck v. A & N Serv. Co.*, 8th Dist. Cuyahoga No. 86524, 2006-Ohio-1358, ¶ 13, quoting *Wayne Bldg. & Loan v. Yarborough*, 11 Ohio St.2d 195, 200, 228 N.E.2d 841 (1967). "To establish that he is a bona fide purchaser, the mortgagee must show that he acquired his interest in good faith, for value, and without actual or constructive notice." *Id.*

{¶ 104} In light of the allegations in the complaint, there are questions about whether Windsor obtained its mortgage in good faith and without notice of Plaintiffs' claims. *See* Complaint, at ¶ 14 (noting that Dart had numerous meetings and conversations with Windsor *before* the mortgage was signed). And, as noted previously, there is an issue about whether the transfer of interests and the mortgage were done in good faith, given the number of entities connected to Katz and the lack of clarity about their interrelationship. This is something only discovery can illuminate.

{¶ 105} Furthermore, "a substantial body of Ohio law * * * holds that 'the purchaser of land in the actual possession of a third person is chargeable with constructive notice of the occupant's title and equities even though the fact of such possession is not actually known to the purchaser.' * * * This rule applies to mortgagees as well as purchasers." *Peck* at ¶ 13, quoting *Sinclair Refining Co. v. Chaney*, 114 Ohio App. 538, 549, 184 N.E.2d 214 (3d Dist.1961). (Other citation omitted.) Plaintiffs occupied the Property at

least until after a 30-day notice to vacate was served on October 22, 2019. *See* JHB's Motion for Temporary Restraining Order (Jan. 29, 2020), Exhibit D. Accordingly, because paragraph 7 of the Complaint stated a cause of action against JHB for unjust enrichment, this claim should not have been dismissed. Moreover, because Windsor has an interest in the property, Windsor should remain as a party, regardless of the resolution of the tortious interference claim in Count 6.

## B. Breach of Fiduciary Duties

{¶ 106} Count 2 of the complaint alleged that both Katz and JHB owned a fiduciary duty to Dart and breached the duty. The trial court did not specifically discuss JHB's fiduciary duty. Instead, the court found that this claim failed because it depended on the June 7, 2016 Agreement, which was barred by the parol evidence rule. Order Sustaining JHB and Windsor's Motion to Dismiss, at p. 4.

{¶ 107} In connection with the fiduciary duty claim against JHB, Plaintiffs argue that an implied partnership agreement can exist in the absence of a written agreement, and they contend that they alleged sufficient facts to give rise to either an express or implied agreement. In response, JHB asserts the same arguments made concerning Katz. They also contend that Plaintiffs' actions after the sale indicate that they were not acting on behalf of a partnership but were acting on their own behalf.

{¶ 108} We discussed these points in detail above, concluding that the issue of joint venture, which would give rise to a fiduciary duty, was sufficiently raised in the complaint, and that Katz, as JHB's agent, could bind JHB with respect to the June 7, 2016 Agreement. Motions to dismiss are not intended to try cases based on the pleadings.

The purpose here is simply to decide if the allegations stated a claim. As we stressed earlier, parties need only include in a complaint "a short and plain statement of the claim for relief" and may assert inconsistent theories. Civ.R. 8(A) and (E)(2).

{¶ 109} Based on the preceding discussion, the trial court erred in dismissing the claim for fiduciary duty in Count 2 against JHB.

## C. Breach of Trust

{¶ 110} This argument involves Count 3 of the Complaint, which asserts breach of trust against both Katz and JHB. In connection with Katz, Plaintiffs argued the applicability of R.C. Chap. 5801, which we have rejected. We also rejected the assertion of breach of a trust agreement against Katz because the trust in question was a constructive trust, which is created in hindsight to prevent unjust enrichment.

{¶ 111} In connection with JHB, however, Plaintiffs argue that the Complaint's allegations indicated that JHB held title for Plaintiffs' benefit in a purchase-money trust. In responding, JHB does not specifically address this point. Instead, it reiterates that Plaintiffs were bound by the purchase contract, which transferred Dart's right to the Property, that parol evidence could not be used, and that JHB was not a party to the June 7, 2016 Agreement. We have rejected those arguments.

{¶ 112} "A resulting trust has been defined as 'one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title.' * * * The device has historically been applied to three situations: (1) Purchase-money trusts; (2) instances where an express trust does

not exhaust the res given to the trustee; and (3) express trusts which fail, in whole or in part." *First Natl. Bank of Cincinnati v. Tenney*, 165 Ohio St. 513, 515-16, 138 N.E.2d 15 (1956), quoting 40 Ohio Jurisprudence, Section 76 at 240.

{¶ 113} Unlike constructive trusts, resulting trusts are designed to enforce intention. "Typically, a purchase-money resulting trust arises when property is transferred to one person but the entire purchase price is paid by another." *Glick v. Dolin*, 80 Ohio App.3d 592, 597, 609 N.E.2d 1338 (8th Dist.1992), citing Restatement of the Law 2d, Trusts, Section 440 at 393 (1959). (Other citations omitted.) "Thus, the equitable owner has an interest in such proportion as the amount he paid bears to the total purchase price." *Id*.

{¶ 114} As an example of how this principle works, in *Glick*, one individual, Linick, purchased a house in 1986 by paying the down payment and obtaining a mortgage. The other party, Dolin, had provided Linick with the down payment. After purchasing the property, Linick leased it to Dolin and his wife pursuant to a four-year lease agreement which provided for rent payments equaling the monthly mortgage payments. A lease addendum further allowed the Dolins to purchase the property for the balance due on the mortgage due at the end of the lease term in 1990. *Id*. at 593-594.

{¶ 115} Subsequently, in late 1987, a lawyer became a judgment creditor of Mr. Dolin and filed a creditor's bill and foreclosure action against the Linicks, Dolins, and other parties with an interest in the house, asserting that Mr. Dolin had an equitable interest in the property that could satisfy the debt. *Id*. at 594. After the trial court granted summary judgment to the Linicks, making the creditor's other claims moot, the creditor appealed. In granting summary judgment, the trial court concluded that since Dolin had

not "paid all or a substantial portion of the purchase price, no resulting trust could arise." *Id.* at 599.

{¶ 116} After considering the evidence, the court of appeals concluded that genuine issues of material fact existed concerning whether the parties intended that Linick would hold the property for Dolin in a purchase-money resulting trust. *Id.* Among the evidence was that Dolin wanted to purchase the property but could not obtain financing due to financial problems. Dolin also agreed to pay Linick a $20,000 fee to obtain the property. *Id.* at 598. In addition, there was correspondence between Linick and Dolin indicating, among other things, that Linick considered himself a "conduit" for Dolin and expected Dolin to hold him harmless for any liabilities he might incur. *Id.* In light of these facts, the court of appeals concluded that issues of fact precluded summary judgment, even though Dolin had not paid the entire purchase price. *Id.* at 598-599.

{¶ 117} Notably, the court stated that "[t]he type of parol evidence offered by the creditor may be admissible to contradict the terms of the deed and/or the lease agreement and to demonstrate the land is held in trust for Dolin." *Id.* at 599. The court also stressed that "[f]urthermore, there exists no requirement that a substantial portion of the purchase price be paid before a resulting trust arises. As previously discussed, the equitable owner has an interest in such proportion as the amount he paid bears to the total purchase price." *Id.*

{¶ 118} In the case before us, the Complaint alleged that Dart paid the entire purchase price, and the intent was that JHB would hold the property for Dart and would not encumber it. After the transfer, Dart and his companies continued to act consistently with this understanding. Accordingly, the trial court erred in dismissing the breach of

trust claim in Count 3 as it related to JHB.

### D. Breach of Contract

{¶ 119} Count 4 of the Complaint asserted a breach of contract claim against both Katz and JHB with respect to the June 7, 2016 Agreement. We have already discussed that matter in detail with respect to both Katz and JHB. Based on our prior discussion, which indicated that Katz, acting as an agent for JHB, could and did bind JHB to the Agreement (at least according to the allegations in the Complaint), the trial court erred in dismissing Count 4 of the Complaint against JHB.

### E. Promissory Estoppel

{¶ 120} Again, the issue of promissory estoppel involved Count 5 of the Complaint, which alleged that Plaintiffs were entitled to relief against both Katz and JHB based on promissory estoppel. In connection with this issue, Plaintiffs argued that Katz had the ability to bind JHB, and that Dart reasonably relied on Katz's promises on JHB's behalf to his detriment. We have thoroughly discussed all the matters that relate to this theory and, given what we have said before, the trial court erred in dismissing this claim against JHB.

### F. Tortious Interference

{¶ 121} Count 6 of the Complaint refers only to Windsor and contends that Windsor tortiously interfered with the business relationship of Dart and JHB by intentionally procuring JHB's breach of its agreement not to encumber the Property without Dart's prior

approval. The trial court dismissed this claim without any discussion.

{¶ 122} In addressing this claim, Plaintiffs note that tortious interference lies when a party interferes with a business agreement and also when a party interferes with a business relationship where no contract exists. They argue that Windsor knew of the Agreement and also knew of the prohibition against encumbering the Property. Nonetheless, Windsor took an interest in the Property and filed a mortgage against it. Windsor has not replied to this argument.

{¶ 123} "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853, paragraph one of the syllabus. To establish lack of justification, there must be proof that "the defendant's interference was improper." *Id.* at paragraph two of the syllabus.

{¶ 124} "Similarly, '[t]he elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.' " *Kademian v. Marger*, 2d Dist. Montgomery No. 24256, 2012-Ohio-962, ¶ 93, quoting *Wolf v. McCullough–Hyde Memorial Hosp.*, 67 Ohio App.3d 349, 355, 586 N.E.2d 1204 (12th Dist.1990).

{¶ 125} As previously noted, the Complaint alleges that before Windsor entered into the mortgage deed, it knew that Katz and JHB were not permitted to encumber the Property. *See* Complaint at p. 4, ¶ 14 (noting that Dart had numerous meetings and

conversations with Windsor before the mortgage was signed). Having placed a mortgage on the property while knowing it was not permitted was not justified, and Plaintiffs suffered damages as a result. Thus, under either theory of business interference, Count 6 stated a claim against Windsor. Again, we stress that we express no opinion on the merits of the claim.

### G. Declaratory Judgment

{¶ 126} The final issue is whether the trial court erred in refusing to allow the declaratory judgment claims in Count 8 to go forward against JHB and Windsor. Given our previous discussion, a controversy existed among the parties, and the court erred in dismissing this part of the Complaint. *AEI Group,* 67 Ohio App.3d at 550, 587 N.E.2d 889.

{¶ 127} Based on the preceding discussion, the Second Assignment of Error is sustained. All the Counts of the Complaint relating to JHB and Windsor stated a claim for relief.

### IV. Conclusion

{¶ 128} Plaintiffs' First Assignment of Error having been sustained in part and overruled in part, and Plaintiffs' Second Assignment of Error having been sustained, the judgment of the trial court is reversed in part and affirmed in part, and this cause is remanded for further proceedings consistent with this opinion. On remand, all claims remain except the claim in Count 3 against Katz.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Jonathan F. Hung
Eric E. Willison
Charles R. Griffith
Joshua J. Fravel
Hon. Dennis J. Adkins